Michael E. **WEISBERG**, et al.,

v.

**TOLL BROTHERS, INC.**, et al.

Civ. A. No. 84–4848.

United States District Court,
E.D. Pennsylvania.

Aug. 26, 1985.

---

Ronald J. Smolow, Trevose, Pa., for plaintiffs.

Alan W. Davis, Philadelphia, Pa., for defendants.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

Michael E. Weisberg and three other individual plaintiffs brought this action individually and on behalf of a class of the buyers of three hundred thirty-four residential homes in Bucks, Chester, Montgomery and Philadelphia Counties, who settled on the purchase of their homes from one of the seventeen named defendants (builders of residential dwellings) between October 6, 1983 and November 19, 1984. The complaint alleges that the defendants violated the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 et seq. (RESPA), by requiring the plaintiff class members to pur-chase title insurance from the title insurance companies selected by the defendant builders. The plaintiffs alleged that the defendants imposed this requirement as a condition of the sale of the defendants' residential dwellings, in violation of 12 U.S.C. § 2608(a), which provides:

No seller of property that will be purchased with the assistance of a federally related mortgage loan shall require directly or indirectly, as a condition to selling the property, that title insurance covering the property be purchased by the buyer from any particular title company.

The class consists of all persons who (a) from on or after October 6, 1983 until November 19, 1984 settled on the purchase of a residential dwelling from any of the defendants; (b) purchased such dwelling with the assistance of a "federally-related mortgage loan," as defined by RESPA; (c) obtained title insurance from a title company selected by defendants pursuant to authorization contained in the Agreement of Sale; and (d) paid their own title insurance charges. Prior to class certification pursuant to Fed.R.Civ.P. 23(c), the parties reached a settlement. On June 27, 1985 a hearing was held on plaintiffs' motion to approve the proposed settlement pursuant to Fed.R.Civ.P. 23(e) following due notice to the members of the proposed settlement class. No class member filed any objection to the settlement, and no class member raised objections at the hearing. Although one class member wrote to the Clerk of Court requesting exclusion from the class, upon being informed that he would receive about $585 under the terms of the settlement he authorized counsel to "rescind" his request for exclusion.

In conjunction with the plaintiff's motion for approval of the class settlement, plaintiffs' counsel has filed a petition for an attorney's fee and costs in the amount of $84,197.70. The parties represented to the Court at the hearing on June 27, 1985 that the negotiations which produced a settlement for the plaintiff class in the total amount of $265,000 were conducted prior to negotiations which culminated in defend-

ants' agreement not to oppose plaintiffs' request for attorneys' fees and costs so long as the amount requested did not exceed $100,000.

For the reasons that follow the Court has determined that the proposed class settlement is fair, adequate, and reasonable, and accordingly the proposed settlement agreement will be approved pursuant to Fed.R. Civ.P. 23(e). The Court also has reviewed counsel's petition for an attorney's fee pursuant to the standards set forth by the Third Circuit in *Lindy Bros. Bldrs. Inc. of Phila. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161 (3d Cir.1973), and has determined that the petition of Ronald Smolow, Esquire for attorney's fees and costs in the amount of $84,197.70 will be granted.

### Approval of the Proposed Settlement

The proposed settlement agreement provides that the plaintiff class will receive a total of $265,000, payable by the defendants in two equal installments. Upon distribution, each class member will receive an award equivalent to approximately 105% of the amount actually paid for title insurance at the time of the closing. The amounts due the individual class members range from about $513 to about $1,390. In addition to the amount of the settlement, the defendants have agreed to modify their standard Agreement of Sale so as to comply with the provisions of RESPA with respect to the purchase of title insurance. It should be noted that, as counsel for plaintiffs advised the Court at the settlement hearing, the class members suffered no actual damages as a result of the alleged violation of the statute. Even if the class members had selected their own title insurance companies, they would have paid approximately the same premium for their title insurance as was charged by the title insurance companies selected by the defendants.

■ The approval or disapproval of a class action settlement is left to the sound discretion of the trial court, which must determine whether the proposed settlement is fair, adequate, and reasonable. *Walsh v. Great Atlantic & Pacific Tea Co.*, 726 F.2d 956 (3d Cir.1983). The Third Circuit has identified a number of factors as relevant to this determination:

> ... (1) the complexity, expense and likely duration of the litigation ...; (2) the reaction of the class to the settlement ...; (3) the stage of the proceedings and the amount of discovery completed ...; (4) the risks of establishing liability ...; (5) the risks of establishing damages ...; (6) the risks of maintaining the class action through the trial ...; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery ...; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation....

*Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir.1975) (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974)).

■ After consideration of the factors set forth in *Girsh*, the Court finds that the proposed settlement agreement in this case is fair, adequate, and reasonable. First, it is clear that further litigation in this case would present issues which would be costly to resolve and which could result in protracted proceedings. The case involves a claim brought under a seldom-litigated statute, and it appears that it is the first class action brought under the provisions of RESPA. The defendants could oppose class-wide relief on a number of unsettled grounds, e.g., that proof must be established that the defendants applied the allegedly unlawful practice to all members of the class as a "policy or custom"; that each class member would have to establish that he or she requested and was refused the opportunity to choose their own insurance company; and that the fact that the class members suffered no actual damages should as a matter of law, preclude the use of the class action device as a means of redressing a "technical violation" of the

statute. *See Shroder v. Suburban Coastal Corp.*, 729 F.2d 1371 (11th Cir.1984) (class action inappropriate under Truth-In-Lending Act where class members suffered no actual damages and violations of the Act were "technical" and had been corrected by defendants).

Furthermore, the expense of litigating the class issues alone, given the number of class members, defendants, and the costs of discovery on those issues, would be substantial, particularly with respect to proof of plaintiffs' claim that each of the seventeen defendant corporate entities was in fact controlled by defendant Toll Brothers. Finally, it appears that the defendants would have asserted several novel defenses to the merits of plaintiffs' claims, e.g., that certain "builder-bond" transactions used to finance the purchase of the residences were not, as a matter of law, "federally-related mortgage loans" within the purview of RESPA. *See* 12 U.S.C. § 2602(1); 24 C.R.F. § 3500.5(b). The novelty of the legal issues involved, the complexity of the class action issues, and the prospective lengthy duration and high cost of continued litigation all weigh in favor of settlement at this time.

Second, the reaction of the class to the settlement is perhaps the most important factor to be weighed in considering the adequacy of a proposed class action settlement. As noted above, notices were served upon all class members, and no objections were received to the settlement by counsel for the parties or by the Court. The complete absence of objections from the class weighs strongly in favor of approval of the settlement.

Third, the stage of these proceedings is relatively early. Although enough preliminary litigation has occurred to identify issues which would arise should the case continue, a settlement at this time would represent a considerable saving of pretrial and trial costs.

The fourth and fifth *Girsh* factors—the risks of establishing liability and damages—are considerable for both plaintiffs and defendants. As noted above, the fact that the class members suffered no actual damages as a result of the defendants' alleged violation of the statute might militate against the propriety of class-wide damages relief for the plaintiffs. The novel legal issues raised by the defendants arguably diminish the plaintiffs' ability to establish liability and damages. However, the defendants also would face a considerable risk with respect to damages because of a treble-damages provision in 12 U.S.C. § 2608(b), which provides that any seller who requires a purchaser to buy title insurance from a particular title insurance company "shall be liable to the buyer in an amount equal to three times all charges made for such title insurance." Although it is unclear if such a treble damages provision should be applicable in a class action wherein the plaintiffs suffered no actual damages, the possibility of treble damages would present a significant risk to the defendants.

The risks of maintaining the class action throughout the trial is the sixth consideration cited in *Girsh*. As noted above, arguably meritorious issues with respect to the propriety of maintaining this case as a class action (with respect to both liability and damages) could be raised by the defendants, and, if the litigation were to continue, the class members would assume a significant risk that class-wide relief might not be available, while the defendants would be faced with the possibility of treble damages.

Seventh, the Court has considered the ability of the defendants to withstand a greater judgment. As the plaintiffs point out, discovery of the financial status of the seventeen named defendants might have revealed that certain defendants would have been unable to withstand a treble damages award. In any event, by means of the proposed settlement the plaintiffs have secured the payment of a substantial sum of money and have obviated the risks associated with obtaining a sizeable award against one or more of the defendants and thereafter discovering that such defendants could not satisfy the judgment.

Finally, the Court has evaluated the range of reasonableness of the settlement fund in light of the best possible recovery and in light of all the risks associated with litigation. The charges for title insurance paid by the three hundred and thirty-four class members totaled approximately $240,-000. Although treble damages on that amount would have resulted in a verdict of about $720,000, the defendants maintained that many "non-title-related" miscellaneous fees charged the class members by the title insurance companies must be eliminated from the calculation of damages, and that the "maximum possible verdict" would have been reduced to approximately $488,-000. In any event, given either of the projected "maximum possible verdicts," and given all the attendant risks of litigation heretofore discussed, the Court has no hesitancy in finding that the settlement amount of $265,000 (to be distributed among class members who suffered *no* out-of-pocket losses) is well within the "range of reasonableness" identified by the Third Circuit in *Girsh v. Jepson.*

The Court finds, in accordance with the discussion set forth above, that all of the relevant considerations weigh in favor of approval of the proposed settlement in this case, and the Court therefore has no hesitancy in finding that the proposed settlement agreement is fair, adequate, and reasonable.

### Petition for Attorneys' Fees

Also before the Court is the petition for attorneys' fees and costs filed by Ronald J. Smolow, Esquire, counsel for plaintiffs. As noted above, no opposition to Mr. Smolow's petition has been filed either by the defendants or by any member of the plaintiff class. Mr. Smolow has submitted detailed affidavits stating that his customary hourly rate is $120 per hour and that a total of 245.6 hours was expended by him in this litigation. Mr. Smolow's associate, Michael Landis, Esquire, has submitted affidavits showing that his customary hourly rate is $84 per hour and that 172.6 hours were expended by him in this litigation.

Mr. Smolow also has submitted records showing that 41.4 hours were expended by a paralegal/law clerk at a compensation rate of $24 per hour. Pursuant to the directives set forth by the Third Circuit in *Lindy Bros. Bldrs. Inc. of Phila. v. American Radiator & Standard Sanitary Corp.,* 487 F.2d 161 (3d Cir.1973) and its ever-expanding progeny (e.g., *In Re Fine Paper Antitrust Litigation,* 751 F.2d 562 (3d Cir.1984)), this Court has determined that the hourly rates charged by plaintiffs' counsel in this litigation are fair and reasonable, and that the hours expended were reasonably and necessarily expended on the litigation. Accordingly, the Court finds the total lodestar for plaintiffs' counsels fees in the requested amount of $45,264, based upon the hourly rates submitted and the amount of time expended.

Plaintiffs' counsel requests that a "multiplier" of 1.85 be applied to the lodestar amount, to produce a total fee request in the amount of $83,750. Counsel submits that a quality multiplier should be applied in this case on the basis, *inter alia,* of the following factors: the contingent nature of success at the time the suit was filed; the risks assumed in developing the case and establishing liability; and the quality of the services rendered. In accordance with the guidelines set forth for the application of quality "multipliers" in *Lindy Bros. Bldrs., Inc. of Phila. v. American Radiator & Standard Sanitary Corp.,* 540 F.2d 102 (3d Cir.1976) (*Lindy II*), the Court has determined that the requested multiplier of 1.85 is appropriate. Plaintiffs' counsel undertook a novel class action alleging a violation of a seldom-litigated federal statute. As noted above, a number of unsettled legal issues made the risks assumed in establishing liability and damages significant. Nevertheless, counsel was able to obtain a settlement whereby a class of 334 home buyers (who had incurred *no* out-of-pocket damages as a result of defendants' alleged unlawful conduct) will be awarded sums ranging from about $513 to about $1,390. Furthermore, the defendants have agreed to modify their agreements of sale

**544**

in the future to comply with the statutory provisions which they allegedly violated.

For all of the reasons set forth above, the Court has determined that the petition of Ronald Smolow, Esq., for attorneys' fees in the amount of $83,570 will be granted. The Court also will award costs in the amount of $477.70, as it finds that the requested costs in said amount were reasonably and necessarily expended on this litigation.