John HANRAHAN, et al.

v.

William BRITT, Individually and t/a, d/b/a American Multimedia, Inc., et al.

Civil Action No. 94–4615.

United States District Court, E.D. Pennsylvania.

Feb. 11, 1997.

John Rohn, Conrad, O'Brien, Gellman & Rohn, Philadelphia, PA, Joseph C. Kohn and Harold E. Kohn, Kohn, Savett, Klein & Graf, Philadelphia, PA, for Plaintiffs.

Patrick W. Kitridge, Philadelphia, PA, for William Britt and Amway Corp., Inc.

William Janssen, Philadelphia, PA, for Dexter Yager.

## MEMORANDUM

DuBOIS, District Judge.

This class action was brought by plaintiffs against defendants, William Britt, Individually and t/a, d/b/a American Multimedia, Inc., Britt Motivation, Inc., Britt Leasing, Inc., Britt Management, Inc., Britt Resources, Inc., Executives Unlimited, Inc., Executive Planners, Inc., and Dexter Yager, Individually and t/a, d/b/a Yager Enterprises, Dexter R. Yager, Sr. & Family Enterprises, Inc., D & B Yager Enterprises, Inc., Dexter Yager Securities, Inc., Dexter Yager Motivation, Inc., Internet Services Corporation, Internet Services, Inc., International Communication Corporation of America, Yager Resort Properties, Inc., Dreambuilders Review, and Amway Corporation, Inc. ("Amway"), for alleged violations of the Sherman Act, 15 U.S.C. § 1,

and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO"). Plaintiffs also alleged pendent state law claims for common law fraud and negligent misrepresentation.

Three issues relating to a proposed class action settlement are presently before the Court. Plaintiffs' Motion for Final Approval of the Class Action Settlement requires the Court to determine whether the class is certifiable and, if so, whether the settlement is fair, adequate and reasonable. If the Court grants that Motion it must then consider whether the application of plaintiffs' counsel for attorneys' fees and other costs should be approved. The Court held a hearing on all three issues on December 16, 1996. For the reasons set forth below, the Court will grant Plaintiffs' Motion for Final Approval of the Class Action Settlement and approve the Application of Plaintiffs' Counsel for Award of Attorneys' Fees, Reimbursement of Cost Disbursements, and for Incentive Payments to the Class Representatives.

## I. Background [1]

Defendant Amway is a corporation engaged in the manufacture, distribution and sale of home care products, health and beauty products, "home tech" products, and commercial products with sales in excess of $5 billion. Amway also markets services and provides catalogs through which consumers can purchase many other "name brand" items. Amway sells its products and services exclusively through hundreds of thousands of independent distributors. Each Amway distributor may sponsor other independent Amway distributors; all distributors who can trace their sponsorship directly or indirectly to a particular distributor are said to be in that distributor's "downline."

Distributors earn income by selling Amway products and services to the public at retail prices and through monthly performance bonuses based on the total volume of products purchased by the distributor in that month. Because each newly sponsored distributor normally purchases products from the distributor who personally sponsored him, the volume of products sold by a distributor will depend, in part, upon the number of distributors in his downline.

Defendants William Britt and Dexter Yager are Amway distributors doing business through a number of related companies. Britt and Yager each occupies a position at the top of his own Amway distributorship pyramid. The distributorship networks that Britt and Yager run are vast: tens of thousands of distributors are in the downlines of each. Britt and Yager, and their businesses, benefit financially from the large number of distributorships in their downlines; in turn, Amway benefits from the success of Britt and Yager.

Plaintiffs John and Stacy Hanrahan and Mark Mensack are the named class representatives.[2] The Hanrahans are former Amway distributors in the downline of defendant Britt; they were distributors of Amway products from January 1992 until August 1992, when they abandoned the distributorship. Plaintiff Mensack is a former Amway distributor in the downline of defendant Yager; he was a distributor of products marketed by Amway from April 1991 until August 1992, at which time he terminated his distributorship.

Plaintiffs allege that defendants Britt and Yager intentionally misrepresented and failed to disclose to them material facts regarding (1) the amount of profits Amway distributors could realistically expect to earn; (2) the expense required to operate a successful Amway distributorship; (3) the existence of profitable business relationships between Amway and numerous major corporations; and (4) the necessity of purchasing motivational materials sold by their affiliated companies and attending motivational rallies

---

**1.** The facts of this case are set out in more detail in a prior Memorandum issued in this case. *See Hanrahan v. Britt,* No. 94–4615, 1995 WL 422840 (E.D.Pa. July 11, 1995).

**2.** See the Second Amended Complaint filed December 27, 1995. The Second Amended Complaint is identical to the First Amended Complaint except that two plaintiffs originally named as class representatives in the First Amended Complaint withdrew as class representatives and were omitted from the Second Amended Complaint.

organized and promoted by defendants. Plaintiffs also allege that defendants Britt and Yager allocated customers and fixed prices for the sale of their motivational materials and that Amway was aware of and encouraged all of the foregoing.

Plaintiffs filed this class action on July 29, 1994, charging defendants Britt, Yager and Amway with violations of the Sherman Antitrust Act (Count I),[3] defendants Britt and Yager with violations of § 1962(c) of RICO (Count II), defendants Britt and Yager with violations of § 1962(d) of RICO (Count III), defendant Amway with aiding and abetting violations of RICO (Count IV), defendants Britt and Yager with fraud (Count V), and defendants Britt and Yager with negligent misrepresentation (Count VI). In addition to damages, plaintiffs claim injunctive and/or declaratory relief (Count VII).

Plaintiffs filed a Motion for Class Certification on November 30, 1994.[4] That motion defined the proposed class as "[a]ll persons in the United States who, since January of 1990, have been or are Amway distributors and have been or are in the sales organizations or downlines of defendants William Britt and/or Dexter Yager;" the proposed class excluded the defendants, any entity in which the defendants have a controlling interest, and the officers and directors, affiliates, legal representatives, heirs, successors, or assignees of the defendants or their officers and directors. The Settlement Agreement defines the proposed class in a similar manner, delineating the proposed class as "[a]ll persons, who at any time during the period from January 1, 1990 to August 1, 1996, have been or are Amway distributors in the Amway lines of sponsorship 'downline' from the Amway distributorships of either William Britt or Dexter Yager or who purchased motivational materials published, produced, distributed or sold" by defendants; the Settlement Agreement proposed class

definition includes the same exceptions as provided in the November 30, 1994 Motion. Plaintiffs seek to be certified as a class under Federal Rule of Civil Procedure 23(b)(3).

In addition, plaintiffs are petitioning this Court for final approval of the settlement contained in the Settlement Agreement dated August 12, 1996, pursuant to Federal Rule of Civil Procedure 23(e). Most significantly, that Agreement requires the defendants to implement a number of reforms intended to remedy practices challenged in their Second Amended Complaint, which practices plaintiffs allege were misleading or placed undue pressure upon them, thereby protecting current and future distributors and offering such distributors more autonomy. Included in the Agreement are provisions requiring the Britt and Yager defendants, and all distributors in their downlines, to give notice that purchases of motivational materials are optional, that customers have the right to cancel or discontinue any future purchases of motivational items, and that purchases of motivational items are subject to a refund policy. Moreover, distributors who choose to sell motivational materials are prohibited from suggesting that the use of any materials will guarantee success as an Amway distributor or that Amway requires the use of such materials. Also, Amway is required to adopt a procedure for resolving disputes related to motivational materials. In addition, plaintiffs will receive freely transferrable coupons which may be used to obtain 35% discounts from suggested retail prices when purchasing up to ten popular Amway products; plaintiffs will only be charged half of the shipping costs customarily charged for delivery of such orders. Finally, the defendants are responsible for the costs of managing the settlement, including sending notices and coupons to class members, and for creating a cash fund to cover attorneys' fees and costs.

---

**3.** By Order dated July 11, 1995 the Court denied Defendants' Joint Motion to Dismiss Plaintiffs' Complaint and Strike Class Allegations. That Order was amended by Order dated August 25, 1995 in which the Court dismissed Count I without prejudice to plaintiffs' right to amend that Count. Plaintiffs filed a First Amended Complaint on December 12, 1995, revising only Count I, the Sherman Act claim.

**4.** The Court, by Order dated August 21, 1996, denied as moot plaintiffs' Motion for Class Certification because the Court, by Order dated August 14, 1996, granted Plaintiffs' Motion for Preliminary Approval of Proposed Settlement and for Authorization to Disseminate Notice to Members of the Settlement Class.

By Order of August 14, 1996 this Court granted Plaintiffs' Motion for Preliminary Approval of the Proposed Settlement and For Authorization to Disseminate Notice to Members of the Settlement Class. Thereafter, written notice of the proposed settlement and its provisions was given the class. Notice to current distributors was the center insert of *Amagram* magazine, a monthly publication mailed to current distributors. *See* Declaration of Karen S. Axdorff. Notice was mailed to the last known addresses of all former distributors. *Id.* Additionally, notice was published in the October 16, 1996 issue of *USA Today,* a newspaper with nationwide circulation. *Id.* Notices informed all class members that they could exclude themselves from the class and informed them how to do so; the notice also informed all class members that a hearing in open Court would be held on December 16, 1996 to address the fairness, reasonableness and adequacy of the Settlement Agreement and plaintiffs' counsel's application for fees.

## II. Discussion

### A. Class Certification [5]

In *In re General Motors Corp. Pick–Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768 (3d Cir.), *cert. denied,* — U.S. —, 116 S.Ct. 88, 133 L.Ed.2d 45 (1995), the Third Circuit made clear that " 'a class is a class is a class,' and a settlement class, if it is to qualify under [Federal] Rule 23 [of Civil Procedure], must meet all of its requirements." *Id.* at 800; *see also Georgine v. Amchem Products, Inc.,* 83 F.3d 610, 624–25 (3d Cir.), *cert. granted,* — U.S. —, 117 S.Ct. 379, 136 L.Ed.2d 297 (1996). The Court in *General Motors* explained that the district court must act as a fiduciary for absent class members and must protect the interests of the federal judicial system. 55 F.3d at 784, 790, 799. Plaintiffs bear the burden of demonstrating that each of the four prerequisites set forth in Rule 23(a) are satisfied. In addition, plaintiffs in this case

must establish that the requirements of Rule 23(b)(3) are met.

The four elements of Rule 23(a) are:

(1) the class is so numerous that joinder of all members is impracticable,

(2) there are questions of law of fact common to the class,

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23. These four elements will be referred to as 'numerosity,' 'commonality,' 'typicality,' and 'adequacy of representation,' respectively. " 'Commonality' like 'numerosity' evaluates the adequacy of the class itself, and 'typicality' like 'adequacy of representation' evaluates the sufficiency of the named plaintiff[s]...." *Hassine v. Jeffes,* 846 F.2d 169, 176 n. 4 (3d Cir.1988).

Rule 23(b)(3) requires that "the court find that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R.Civ.P. 23. The requirement of Rule 23(b)(3) "relates to the conservation of litigation effort." *Katz v. Carte Blanche Corp.,* 496 F.2d 747, 756 (3d Cir.), *cert. denied,* 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1974).

In deciding the issue of class certification, the Court stresses that it does not look to the probability of success on the merits. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 2152–53, 40 L.Ed.2d 732 (1974). However, in determining whether the requirements of Rule 23 have been met, "[a] district court certainly may look past the pleadings." *Castano v. American Tobacco Co.,* 84 F.3d 734, 744 (5th Cir.1996); *Blackie v. Barrack,* 524 F.2d 891, 901 n. 17 (9th Cir.), *cert. denied,* 429 U.S.

---

5. Although the Court, by Order dated August 21, 1996, denied as moot plaintiffs' Motion for Class Certification (filed November 30, 1994), *see supra* note 4, because a settlement class must be certifiable under the requirements of Rule 23, the

Court addresses whether the proposed class is certifiable in connection with Plaintiffs' Motion for Final Approval of the Class Action Settlement.

816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976). Thus, in addition to analyzing the allegations in the Complaint, in determining whether plaintiffs have met their burden of establishing each of the Rule 23 class action requirements, the Court will, to the extent necessary, consider affidavits, depositions and other discovery material appended as exhibits to the parties' submissions to the Court.[6] *See General Tel. Co. v. Falcon,* 457 U.S. 147, 160, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982) ("Sometimes the issues are plain enough from the pleading ... and sometimes it may be necessary for the court to probe behind the pleading before coming to rest on the certification question."). Finally, the conclusion to certify a class is within the sound discretion of the district court. *Garris v. Gianetti,* 160 F.R.D. 61, 64 (E.D.Pa.1995) (citing *In re School Asbestos Litig.,* 789 F.2d 996, 1009 (3d Cir.), *cert. denied,* 479 U.S. 852, 107 S.Ct. 182, 93 L.Ed.2d 117, and *cert. denied,* 479 U.S. 915, 107 S.Ct. 318, 93 L.Ed.2d 291 (1986)).[7]

### 1. The Four Elements of Rule 23(a)

#### a. NUMEROSITY

The first prerequisite, numerosity, requires that the proposed class be so "numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). That requirement is easily met in this case.

■ The exact number or identity of the members of the plaintiff class is not required. Plaintiffs allege that the putative class consists of thousands of persons. Second Amended Complaint, at ¶ 41a. Defendants state that the class may contain more than two and one half million members. Defendant's Joint Memorandum in Opposition to Plaintiff's Motion for Class Certification, at 1. Either estimate is sufficient to satisfy the numerosity requirement.[8]

#### b. COMMONALITY

■ The second requirement of Rule 23(a) is the existence of questions of law or fact common to the class.[9] "Because the requirement may be satisfied by a single common issue, it is easily met." *Baby Neal ex rel Kanter v. Casey,* 43 F.3d 48, 56 (3d Cir.1994). "The fact that there is some factual variation among class grievances will not defeat a class action." *Rosario v. Livaditis,* 963 F.2d 1013, 1017 (7th Cir.1992) (finding commonality of fact and law were evident in fraud claims even though the class consisted of students with varying degrees of exposure to program and teachers), *cert. denied,* 506 U.S. 1051, 113 S.Ct. 972, 122 L.Ed.2d 127 (1993); *Brist v. County of Delaware and Borough of Darby,* No. 94–1426, 1995 WL 50954, *3 (E.D.Pa. Feb.7, 1995) (holding that there was a common issue despite disparate factual situations of putative class members).

■ The general premise of Plaintiffs' Complaint is that defendants engaged in a systematic and uniform course of fraudulent conduct designed to encourage membership and continued participation in the Amway distribution program. Plaintiffs complain of repetitive and carefully orchestrated recruitment guidelines for which defendants provided scripts which misrepresented, omitted or

---

**6.** At the December 16, 1996 hearing, counsel for plaintiffs explained that class certification discovery had been completed and that a significant amount of merits discovery had taken place.

**7.** The Court's determination that plaintiffs' motion for certification of the settlement class should be granted comes on the heels of a recent opinion by the Third Circuit in which that Court concluded settlement class certification was not appropriate. *See Georgine,* 83 F.3d at 634. *Georgine* exemplifies limitations on the use of class actions to settle the whole spectrum of liability, past, present, and future, arising out of mass tort claims in which plaintiffs invoke many different legal and factual allegations, defendants raise numerous defenses, and choice of law concerns magnify manageability problems. In *Gen-*

*eral Motors* the Third Circuit explained that it did not believe that, on the record before it, the class could meet the certification requirements, and remanded the case for further findings. 55 F.3d at 804.

**8.** The Court notes that the class exceeds 1.2 million. Over 1.2 million notices were mailed to class members; others were notified by publication. See Declaration of Karen S. Axdorff (explaining how notices were sent to class members).

**9.** The Court later addresses the requirement of Rule 23(b)(3) that common questions predominate over individual ones. *See infra* Part II. B.2.a.

downplayed material facts. Plaintiffs further allege that as a result of defendants' cumulative approach they were deceived in incremental doses. All of this was done, plaintiffs contend, in order to induce class members to join the Amway "family" and then exploit them. *See* Plaintiffs' Reply Memorandum in Support of Class Certification, at 2–15.

Subsumed within plaintiffs' allegation of a general fraudulent scheme are the more specific common questions of whether defendants violated the Sherman Act by engaging in unreasonable restraint of trade, whether defendants violated RICO by conducting an enterprise through a pattern of mail and wire fraud, and whether defendants systematically made fraudulent misrepresentations or negligent misrepresentations in connection with the promotion of the distributorships, the likelihood of success of such distributorships, and the need to purchase motivational materials. *See* Plaintiffs' Motion for Preliminary Approval of Proposed Settlement, at 9–10. Whether defendants participated in this course of conduct is a common question. *See, e.g., Kline v. First Western Government Sec., Inc.,* No. 83–1076, 1996 WL 153641, *4 (E.D.Pa. Dec. 21, 1995) (whether defendants made fraudulent misrepresentations and/or material omissions are the paradigmatic issues common to all class members); *Rosen v. Fidelity Fixed Income Trust,* 169 F.R.D. 295, 297–98 (E.D.Pa.1995) (commonality exists because the proposed class members are challenging the same conduct of defendants).

Considering all of plaintiffs' allegations, the Court concludes there are significant questions of law and fact common to the class. Thus, the commonality requirement is met.

### c. TYPICALITY

■ The third element of Rule 23(a) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R.Civ.P. 23(a)(3). "In the context of Rule 23(a)(3), 'typical' does not mean identical." *Friedman v. Lansdale Parking Authority,*

No. 92–7257, 1993 WL 338174, *3 (E.D.Pa. Aug. 30, 1993) (citing *Eisenberg,* 766 F.2d at 786). "Factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory." *Hoxworth v. Blinder, Robinson & Co.,* 980 F.2d 912, 923 (3d Cir.1992); *accord Baby Neal,* 43 F.3d at 58. "The heart of this requirement is that the plaintiff[s] and each member of the represented group have an interest in prevailing on similar legal claims." *Seidman v. American Mobile Systems, Inc.,* 157 F.R.D. 354, 360 (E.D.Pa.1994).[10]

■ The claims of all class members in this case are based on the same systematic conduct and legal theories. The three named class representatives and other class members contend that defendants engaged in antitrust violations and a course of fraudulent and misrepresentative conduct; these claims of the named class representatives and other class members are predicated on the same legal theories—namely, the Sherman Act, RICO, fraud, and misrepresentation. As such, the typicality requirement is satisfied. *See, e.g., Kline,* 1996 WL 153641, at *6–*9 (finding that plaintiffs satisfied the typicality requirement where all class members were subject to misrepresentations or omissions in oral and written information because even though each member had an interest in prevailing on similar legal claims it was inevitable that individual situations would differ); *Zacharjasz v. Lomas and Nettleton Co.,* No. 87–4303, 1988 WL 54066, *2 (E.D.Pa. May 23, 1988) (named plaintiffs' pattern of fraudulent dealings with defendants did not markedly differ from other class members' dealing with defendants).

### d. ADEQUACY

■ The Rule 23(a)(4) prerequisite is met if "the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). "The adequacy of representation inquiry has two components designed to ensure that absentees' interests are

---

**10.** The Court notes that this requirement overlaps to some extent with the adequacy of representation requirement. *See Georgine,* 83 F.3d at

632. The Court analyzes adequacy of representation next. *See infra* Part II.A.1.d.

fully pursued." *Georgine,* 83 F.3d at 630. The Court must ensure that class counsel are qualified and serve the interests of the entire class. *General Motors,* 55 F.3d at 801. Also, interests of the named plaintiffs and absentees must be sufficiently aligned that there are no conflicts. *Id.* at 800–01.[11] Initially, the Court notes that defendants have not challenged the qualifications of class counsel. Counsel are clearly qualified and experienced, having previously served as counsel in extensive class litigation in this district.

■ The Court also concludes that there are no conflicts among members of the class. Plaintiffs contend that defendants acted through a systematic course of conduct which concealed information from and misrepresented information to the entire class. *See, e.g.,* Second Amended Complaint, ¶¶ 17–19, 28–30, 67–68. As such, all plaintiffs—named and absent—have an interest in seeing liability established on the part of the defendants. Moreover, on the present record the Court does not find a conflict between former distributors, including named plaintiffs, and current distributors, who may be adversely affected by a judgment against defendants. "Many courts have held that speculative conflict should be disregarded at the class certification stage. Potential conflicts relating to relief issues which would arise only if the plaintiffs succeed on common claims of liability on behalf of the class will not bar a finding of adequacy...." 1 Herbert B. Newberg et al., Newberg on Class Actions § 3.25 at 3–136–38 & n. 358 (citations omitted); *see also Bogosian v. Gulf Oil Corp.,* 561 F.2d 434, 449 (3d Cir.1977) (finding that representation was adequate even though current gas station

lessees, the named plaintiffs, and former lessees would seek different remedies), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978); *Rosen,* 169 F.R.D. at 300–01 (refusing to speculate over conflict even though named plaintiff was a former shareholder and a judgment in her favor might have injured class members who continued to hold shares).[12]

**2. The Two Elements of 23(b)(3)**

Having satisfied all four prerequisites of Rule 23(a), plaintiffs must also satisfy the two prongs of Rule 23(b)(3). First, plaintiffs must show that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members." Fed.R.Civ.P. 23(b)(3). Second, plaintiffs must show that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *Id.*

*a. PREDOMINANCE*

■ This case is premised primarily upon defendants' fraudulent conduct.[13] The Court finds that the facts as alleged show that defendants' systematic course of conduct misled class members and concealed material information from the putative class and that common questions therefore predominate over individual questions. Plaintiffs' allegations paint a picture of scripted, regimented, and uniform oral and written misrepresentations and omissions designed by defendants to induce class members to join the Amway "family" and then exploit them. Plaintiffs' Complaint and the Exhibits referenced in Plaintiff's Reply Memorandum in Support of

---

**11.** The Court further notes that in *General Motors* Judge Becker explained that when, as here, settlement precedes class certification, "collusion, inadequate prosecution and attorney inexperience are the paramount concerns." 55 F.3d at 795. Thus, "the need for the adequacy of representation finding is particularly acute in settlement class situations." *Id.* The Court finds no evidence of collusion, less than zealous prosecution or attorney inexperience in this case.

**12.** Nor are the conflicts in this case, where all plaintiffs receive the same award, as stark as in *Georgine* or *General Motors,* where there were significant questions on how damages were to be

allocated, including questions concerning the rights of future claimants in *Georgine* and questions regarding the impediments to fleet owners' use of certificates in *General Motors.* Compare *Georgine,* 83 F.3d at 630; *General Motors,* 55 F.3d at 800–01.

**13.** This fraudulent conduct is the crux of all claims. Even the antitrust claim is founded on misrepresentations: Britt represented to distributors in his downlines that they must not purchase motivational materials distributed by anyone other than him. Complaint ¶ 34. Yager made similar representations. *Id.*

Motion for Class Certification buttress plaintiffs' allegations that they were defrauded by a systematic and cumulative scheme. *See* Second Amended Complaint at ¶¶ 17–35, 67–69, 76–78; Plaintiff's Reply Mem. at 2–15 (explaining how recruiting was uniformly scripted, such scripts omitted or minimized material facts, misrepresentations were repeated in documents and brochures, and success was repeatedly claimed to hinge on buying motivational materials).

In this case, whether documents and oral statements contained uniform omissions and misrepresentations is the central question which will predominate over issues of individual reliance or damages. *See Kline*, 1996 WL 153641, at *25. Numerous courts have found common questions to predominate where, as here, the litigation will concern "similar or standardized oral representations contain[ing] significant legal and factual questions which are common to the class." *Zachárjasz*, 1988 WL 54066, at *5.[14] Moreover, in the case at hand, "[i]ssues regarding any misrepresentation/omission, materiality, and intent are relevant to both the federal and state claims and thus common to all members of the class." *Bell Atlantic Corp. Sec. Litig.*, No. 91–514, 1995 WL 733381, *5 (E.D. Pa. Dec. 11, 1995). Further, the Court notes that, were this case to proceed to trial, individual issues could be resolved through "a variety of mechanisms, including questionnaires, separate hearings, or special masters, if needed." *Id.* at *7 (citing cases). Thus, cognizant that Rule 23(b)(3) requires a predominance of common questions, not a unanimity of them, *Sharp v. Coopers & Lybrand*, 70 F.R.D. 544, 547 (E.D.Pa.1976), *aff'd*, 649 F.2d 175 (3d Cir.1981), *cert. denied*, 455 U.S. 938, 102 S.Ct. 1427, 71 L.Ed.2d 648 (1982), the Court concludes that the common questions predominate over whatever individual issues of reliance or damages are presented by plaintiffs' claims.

### *b. SUPERIORITY*

 Under Rule 23(b)(3) the Court must next "balance, in terms of fairness and efficiency, the merits of a class action against those of 'alternative available methods' of adjudication." *Georgine*, 83 F.3d at 632 (citations omitted). First, the Court concludes that a class action is the fairest way to adjudicate the questions raised in this case. Because the amounts at stake for each plaintiff are small it would be uneconomical for each plaintiff to institute a separate lawsuit. *See Deposit Guaranty Nat. Bank v. Roper*, 445 U.S. 326, 339, 100 S.Ct. 1166, 1174, 63 L.Ed.2d 427 (1980) ("Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class action device.").

Second, the class action will not be inefficient or unmanageable. Because each class members' claims center on common questions and because of the overlap between the required questions of proof economies of scale can be achieved in addressing the state issues with the federal claims. *In re LILCO Securities Litigation*, 111 F.R.D. 663, 670 (E.D.N.Y.1986). These economies of scale are magnified when weighed against the bur-

---

**14.** *See also Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718 (11th Cir.1987) (finding predominance because allegedly misleading and similar oral representations stemmed from defendants' common schemes, though such representations were made by plaintiff investors' individual brokers); *In re Bell Atlantic Corp. Sec. Litig.*, No. 91–514, 1995 WL 733381, *7 (E.D. Pa. Dec. 11, 1995) (following trend of certifying classes in suits in which plaintiffs brought negligent misrepresentation and fraud claims based on conclusion that common questions about the existence of misrepresentations or omissions, their materiality, and defendant's intent predominated over individual issues of reliance); *Shankroff v. Advest, Inc.*, 112 F.R.D. 190, 193 (S.D.N.Y.1986) (finding that common questions predominated where there existed a common course of oral distortions and omissions and allegations focusing on managerial decisions which affect all class members "even though there is not a complete identity of facts"); Newberg, *supra*, § 22.49 at 22–202–03 ("The fact that the representative plaintiff and the class members may have relied on different documents does not prevent a finding of predominance of common questions when the alleged misrepresentations are similar or present a *nucleus of fact* common to the classes." (emphasis in original)). *But see, e.g., Strain v. Nutri/System, Inc.*, No. 90–2772, 1990 WL 209325, *6 (E.D.Pa. Dec. 12, 1990) (stating that "[b]ecause the incidents did not occur in a single place, at the same time, or under identical conditions individualized issues" predominate).

den the federal and state court systems would endure in trying numerous duplicative suits.

Further, choice of law issues will not create an insurmountable problem. "The Court doubts that the differences in the several states' laws of fraud and negligent misrepresentation are so great as to preclude class treatment." *Id.; see also In re ORFA Securities Litigation,* 654 F.Supp. 1449, 1462–63 (D.N.J.1987) (not finding the difference in state law doctrines of fraud and negligent misrepresentation to be substantial enough to lead the court to deny certification). *But see Squitieri v. Gould,* 133 F.R.D. 25, 28 (E.D.Pa.1990) (denying class certification because, among many other reasons, there are "differences among the laws of the various states regarding negligent misrepresentation and the lack of clarity in state law on these claims"). Additionally, the Court notes that none of the criteria listed in Rule 23(b)(3) as being pertinent to the Court's determination counsels against finding that the class action device is the most appropriate manner of resolving this dispute. With respect to the specific matters listed in Rule 23(b)(3) the Court concludes as follows: (1) individual members have no interest in controlling the prosecution of separate actions; (2) there is no litigation against class members that would suggest that class certification is inappropriate; (3) concentration of the claims in this forum is not undesirable; and, (4) the difficulties likely to be encountered in the management of a class action, are, on balance, not too unwieldy.

Finally, the Court is not blind to significant manageability concerns regarding individualized discovery on the questions of reliance, causation and damages that would be required if the case were to go to trial. Nevertheless, the Court is confident that at the appropriate time, counsel and the Court could "develop a variety of solutions to streamline the case and resolve administrative problems." *Zacharjasz,* 1988 WL 54066, at *5; *see also Kline,* 1996 WL 153641, at *12 (concluding certification of subclasses would not render a class action inferior to individual suits).

In sum, the Court finds that the settlement class is certifiable. The Court concludes that plaintiffs have satisfied the numerosity, commonality, typicality and adequacy of representation requirements set forth in Rule 23(a). Additionally, the two requisites of Rule 23(b)(3) are met because questions of law or fact common to members of the class predominate over questions affecting only individual members of the class and the class action device is superior to other methods.

## B. APPROVAL OF THE SETTLEMENT

 Federal Rule of Civil Procedure 23(e) requires Court approval of all class action settlements. That rule provides that "[a] class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such a manner as the court directs." *Id.* In determining whether to approve a class action settlement, the Court acts as "a fiduciary who must serve as a guardian of the rights of absent class members." *General Motors,* 55 F.3d at 784 (quoting *Grunin v. International House of Pancakes,* 513 F.2d 114, 123 (8th Cir.), *cert. denied,* 423 U.S. 864, 96 S.Ct. 124, 46 L.Ed.2d 93 (1975)).

A "presumption of correctness is said to attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery." Manual for Complex Litigation, Second § 30.41 (1985) cited in *Ratner v. Bennett,* 92–4701, 1996 WL 243645, *5 (E.D.Pa. May 8, 1996). A settlement must be fair and reasonable and adequately protect the members of the class to be approved. *General Motors,* 55 F.3d at 785.

 In *Girsh v. Jepson,* 521 F.2d 153 (3d Cir.1975), the Third Circuit adopted a nine-factor test to guide district courts in evaluating whether a class action settlement is fair, adequate and reasonable, as follows:

(1) the complexity, expense and likely duration of the litigation ...; (2) the reaction of the class to the litigation ...; (3) the stage of the proceeding and the amount of discovery completed ...; (4) the risks of not establishing liability ...; (5) the risks

of establishing damages; (6) the risks of maintaining the class action through the trial . . .; (7) the ability of the defendant to withstand a greater a judgment . . .; (8) the range of reasonableness of the settlement fund in light of the best possible recovery . . .; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. . . .

*Id.* at 157 (quoting *City of Detroit v. Grinnell Corp.,* 495 F.2d 448 (2d Cir.1974)). After applying each of these nine factors to the case at bar, the Court concludes that the settlement is fair, adequate and reasonable. *See Ratner,* 1996 WL 243645 (applying factors).

First, in light of the expenses of a complex and protracted trial, and the risks inherent in all trials, the immediate and guaranteed benefits of the settlement are in the best interests of the class. Second, not one of the class members filed a written objection to the settlement with the Court; and, less than one-half of one percent of eligible class members requested exclusion from the class. *See* Plaintiffs' Motion for Final Approval of Class Action Settlement at 23. The dearth of negative reactions to the Settlement counsels in favor of approving the Settlement. *See Bell Atlantic Corp. v. Bolger,* 2 F.3d 1304, 1313 n. 15 (3d Cir.1993) (assuming that "silence constitutes tacit consent to the agreement").[15]

Third, because the settlement was not reached until after a substantial amount of merits discovery had been completed—the parties took numerous depositions and exchanged thousands of pages of documents—and a series of motions had been briefed, counsel for both parties were well positioned to evaluate the strengths and weaknesses of their cases. In fact, the parties engaged in prolonged arms-length, albeit unsuccessful, settlement negotiations in the Spring of 1996; it was not until the summer of that year that the parties reached a settlement on the eve of a pretrial conference. After inquiring into the negotiation process the Court is confident

that there was no collusion. *See General Motors,* 55 F.3d at 805. The Court is therefore deferential to the reasoned judgment of the well-informed attorneys. *See Jamison v. Butcher & Sherrerd,* 68 F.R.D. 479, 481 (E.D.Pa.1975).

The fourth, fifth and sixth factors direct the Court to analyze the risks of not establishing liability, not establishing damages or not maintaining the class action through the trial. Defendants are represented by very capable attorneys and resolutely deny any liability. Thus, were it not for the settlement, plaintiffs would face the rulings of this Court on motions to dismiss or for summary judgment. Moreover, at trial plaintiffs would have to successfully prosecute claims involving complex questions of causation, reliance and damages. Thus, in light of the uncertainty of trial, the Settlement affords plaintiffs definite benefits. Such risks also auger in favor of Court approval of the Settlement.

The seventh, eighth and ninth factors require the Court to balance the Settlement against the defendants' ability to withstand a greater judgment and the best possible recovery, in light of the already analyzed risks of litigation. Although the part of the Settlement providing for coupons allowing class members to obtain 35% discounts when purchasing ten popular Amway products does not offer substantial monetary relief and will not be embraced by all class members, the part of the Settlement requiring all defendants to reform practices and procedures addresses the "defect that formed the central basis of the [plaintiffs'] complaint." *General Motors,* 55 F.3d at 810 (finding inadequate a settlement which offered only coupons and which did not address "the central basis of the complaint," vehicle safety defects). Thus, because defendant will be forced to change the practices that plaintiffs alleged were misleading or placed undue pressure upon them, the Settlement satisfies the gravamen of Plaintiffs' Complaint. The Court therefore concludes that in light of the risks of litigation, the Settlement, by requiring

---

15. The Court notes that absentees were in a good position to evaluate whether the settlement was satisfactory because every absentee was given notice of the terms of the settlement at the same time they were offered the opportunity to opt out of the class. *See General Motors,* 55 F.3d at 792, 812–13.

defendants to make and enforce significant and substantial changes in procedures to which plaintiffs objected, is adequate as compared to the best possible recovery.[16] Further, although the coupons do not provide plaintiffs substantial monetary relief, defendants are responsible for paying for the entire cost of administering the Settlement.[17]

In sum, the Court concludes that the Settlement is in the best interests of the class. It resulted from extensive arms-length negotiation by well-informed and experienced counsel. Also, appropriate notice was sent to each member of the class. Accordingly, the settlement will be approved as fair, adequate and reasonable.

## C. ATTORNEYS' FEES AND COSTS

Plaintiffs' counsel request a fee of $302,-009.99 and reimbursement for out-of-pocket disbursements in the amount of $34,009.08. Applicants also seek a total of $38,980.93 to be paid to two of the class representatives: $25,000 as a payment for the substantial services rendered by the two representatives and $13,980.93 as reimbursement for out-of-pocket expenses. The total amount sought in counsels' application is $375,000.00. These fees and costs will be paid by the defendants into a special cash fund. Finally, although notices disseminated to class members informed them of plaintiffs' counsel's intention to apply for these fees and costs, no objections were received.

■■■ Review of fee applications is required in all class action settlements. In doing so courts have applied the percentage of recovery and lodestar approaches. *General Motors*, 55 F.3d at 821. Courts use the former approach in common fund cases. The lodestar method, which bases the appropriate fee award on the number of hours expended on the case multiplied by a reasonable hourly rate, is most appropriate in statutory fee shifting cases or in limited cases when the value of a settlement cannot be easily calculated.

■■■ Although the settlement in the case at bar is difficult to value, the Court can draw sufficient conclusions to enable it to determine whether the requested counsel fee is appropriate under the percentage of recovery approach. *Cf. General Motors*, 55 F.3d at 822 (directing that judges make a reasonable assessment of a settlement's value). Noting that the median award in a class action is approximately 25%, *see In re Greenwich Pharmaceutical Securities Litigation*, No. 92–3071, 1995 WL 251293, *7 (E.D.Pa. April 26, 1995), the Court concludes that the fee of $302,099.99 requested by plaintiffs' counsel is certainly reasonable.

The Court begins its analysis by noting that for the twenty-one products on which class members are entitled to 35% discounts from the suggested retail price, the suggested retail price ranges from $5.50 to $54.55;[18] class members may purchase up to ten discounted products, but no more than three of any one product. Additionally, class members who redeem coupons are charged only half the regular shipping costs. Although the Court cannot estimate how many class members will redeem their coupons for discounts nor for which or how many products class members will seek their discounts, even under the most conservative estimate, the Court concludes that the fee award will not exceed an unreasonable percentage of the value of the coupon portion of the settle-

---

16. While defendants surely could withstand a greater judgment, the Court does not attribute any great significance to this finding under the facts of this case. *See General Motors*, 55 F.3d at 818.

17. At the December 16, 1996 hearing counsel for defendants estimated that the total cost for providing notice to class members was approximately $150,000. Transcript, at 31. The Court concludes that it will cost the defendants a substantial sum to administer the mailing of coupons to those class members who requested cou-

pons by submitting the proof of claim appended to the notice on or before January 15, 1997. At the hearing counsel for defendants advised the Court that after defendants have provided coupons to such class members they will file a certification detailing the procedure utilized in the processing of requests for coupons and the mailing of coupons and the total cost incurred. *Id.* at 34–35.

18. The average suggested retail price of the twenty-one products is approximately $14.

ment.[19] Additionally, the coupon portion of the settlement is only one part of the total settlement; the settlement also requires defendants to reform numerous practices challenged by plaintiffs, a substantial benefit which is difficult, if not impossible, to value in dollars. In sum, as compared to the value of the entire settlement, the Court finds that the requested attorneys' fee actually constitutes a very small percentage.

Moreover, the Court notes that the request for fees is reasonable under the lodestar method. Plaintiffs' counsel have submitted affidavits detailing that they have expended 2,634.25 hours on this case. Multiplying the total hours by counsels' normal rates yields a lodestar of $560,068.00. The total fee of $302,099.99 requested by plaintiffs' counsel is significantly less than their lodestar, meaning that they have asked the Court to apply a multiplier of *less* than one. *Compare Rabin v. Concord Assets Group, Inc.,* No. 89–6130, 1991 WL 275757, *1 (S.D.N.Y. Dec. 19, 1991) (explaining that in "recent years multipliers of between 3 and 4.5 have been common" (citation omitted)). In other words, the fee plaintiffs' counsel requests is less than the total market value of services they rendered on behalf of the class. Accordingly, in light of all the circumstances, the Court concludes that the fee application is reasonable under either the percentage of recovery or lodestar method.

With respect to the application for reimbursement of $34,009.08 in out-of-pocket expenses incurred by counsel and for reimbursement of $13,980.93 expended by class representatives, the Court finds that all such expenses are sufficiently documented, proper and reasonable; it will therefore approve such reimbursements. Finally, the Court concludes that two of the class representatives are entitled to a total of $25,000.00 as payment for substantial services rendered because plaintiffs' counsel would have been required to retain others to perform such services at a cost in excess of that amount.

### III. Conclusion

For the aforesaid reasons Plaintiffs' Motion for Final Approval of Class Action Settlement is granted and the Application of Plaintiffs' Counsel for Award or Attorneys' Fees, Reimbursement of Cost Disbursements, and for Incentive Payments to the Class Representatives is approved.

An appropriate order follows.

### *ORDER*

**AND NOW**, to wit, this 11th day of February, 1997, upon consideration of Plaintiffs' Motion for Final Approval of the Class Action Settlement (Document No. 86, filed December 11, 1996), and Application of Plaintiffs' Counsel for Award of Attorneys' Fees, Reimbursement of Cost Disbursements, and for Incentive Payments to the Class Representatives (Document No. 85, filed October 15, 1996), for the reasons set forth in the attached Memorandum, **IT IS ORDERED** that Plaintiffs' Motion for Final Approval of the Class Action Settlement is **GRANTED** and the Application of Plaintiffs' Counsel for Award of Attorneys' Fees, Reimbursement of Cost Disbursements, and for Incentive Payments to the Class Representatives is **APPROVED**.

---

**19.** For example, if only half of the class were to seek a discount, and if each of those members only sought a discount on the purchase of one product, and even if that one product was always the cheapest product, the attorneys' fee would only be approximately 25% of the value of the coupon portion of the settlement. Similarly, the attorneys' fee requested would not exceed 25% of the coupon portion of the settlement if only twenty percent of the class sought only one discounted item of average price.