Robert J. **RENDLER** and
Lori J. Schumacher,

v.

**GAMBONE BROTHERS DEVELOP-
MENT COMPANY; Gambone Brothers
Construction Co.; Gambone Brothers
Enterprises, Inc.; and Continental Real-
ty Co., Inc.**

Civ.A. No. 97–CV–1156.

United States District Court,
E.D. Pennsylvania,
Philadelphia Division.

June 18, 1998.

Ronald Jay Smolow, Michael H. Landis, Smolow & Landis, Trevose, PA, for Plaintiffs.

Gregory F. Lepore, Holl & Assoc., P.C., Lansdale, PA, for Defendants.

## ORDER AND MEMORANDUM

DUBOIS, District Judge.

### ORDER

**AND NOW**, to wit, this 18th day of June, 1998, upon consideration of Plaintiffs' Motion for Class Certification (Document No. 22, filed November 17, 1997); Defendant Continental Realty's Brief in Opposition to Class Certification (Document No. 23, filed December 16, 1997); Gambone Defendants' Answer to Plaintiffs' Motion for Class Certification (Document No. 24, filed December 17, 1997); Reply Brief In Support of Plaintiffs' Motion for Class Certification (Document No. 25, filed January 12, 1998); Plaintiffs' Motion to Amend Class Definition (Document No. 31, filed April 6, 1998); Defendant Continental Realty's Memorandum in Opposition to Plaintiffs' Motion to Amend Class Certification (Document No. 32, filed April 29, 1998); and Plaintiffs' Reply Memorandum in Support of Motion to Amend Class Definition (Document No. 34, filed May 5, 1998), following oral argument on February 25, 1998, **IT IS ORDERED THAT**

1. The plaintiff class, defined as follows, is **CERTIFIED**:

All persons and entities (excluding defendants and their subsidiaries, affiliates, divisions, parent entities and the employees thereof) who (a) from on or after February 18, 1996 closed on the purchase of a residential dwelling from Gambone Brothers Development Company, Gambone Brothers Construction Company, Gambone Brothers Enterprises, Inc. or their parent, subsidiary and affiliated corporations, partnerships and entities; (b) purchased that dwelling with the assistance of a "federally-related mortgage loan" as defined by the Real Estate Settlement Procedures Act; (c) obtained title insurance from a title company suggested by defendants where such authorization was contained in the Agreement of Sale; and (d) paid their own title insurance charges.

2. Plaintiffs' Motion for Class Certification, with the class defined as set forth above, is **GRANTED**;

3. Plaintiffs' Motion to Amend Class Definition is **DENIED AS MOOT**.

### *MEMORANDUM*

## I. Background

On February 18, 1997, plaintiffs filed a class action complaint, alleging that defendants had violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.* Presently before the Court are Plaintiffs' Motion for Class Certification and Plaintiffs' Motion to Amend Class Definition.

The case arises from plaintiffs' purchase of a home from defendant Gambone Brothers Development Company ("Gambone Brothers") on March 27, 1996. Defendant Continental Realty ("Continental") acted as sales representative for Gambone Brothers. On October 29, 1995, plaintiffs signed a preprinted Agreement of Sale ("the Agreement") to purchase the home. Paragraph nineteen of the Agreement authorized Continental to place title insurance for the purchaser and had a blank line for insertion of the name of the title insurance company.

In the Complaint, plaintiffs allege that "Gambone Brothers and Continental Realty maintained a policy and practice of requiring buyers to purchase title insurance ... from particular title insurance companies" and that plaintiffs were required to purchase title insurance from Central Montgomery Abstract Company ("CMAC").[1] Complaint at ¶¶ 16–17. According to the Complaint, this "policy and practice"[2] violates a provision of RESPA which states that: "No seller of property that .will be purchased with the assistance of a federally related mortgage loan shall require directly or indirectly, as a condition to selling the property, that title insurance covering the party be purchased by the buyer from any particular title company." 12 U.S.C. § 2608(a) (1989).

The evidence relating to when CMAC was named title insurer for plaintiffs is conflicting. Kathleen Shetty, the Continental sales agent who worked with plaintiffs, testified at her deposition that it was her practice to tell purchasers that CMAC issued title insurance for most properties sold by Continental and that CMAC offered a ten percent discount in price. If the purchaser approved, Ms. Shetty would write "Central Montgomery Abstract" on the blank line in paragraph nineteen of the Agreement. Mot. for Class Certif., Exhibit C, ("Shetty Dep.") at 33–34, 36. However, Ms. Shetty did not specifically recall completing plaintiffs' Agreement. *Id.* at 43–44. Robert Rendler testified that when he signed the Agreement of Sale, the line in paragraph nineteen for identifying the title insurer was blank, and that Ms. Shetty completed it at a later time. Continental's Brief in Opposition to Class Certification ("Continental's Brief"), Exhibit A ("Rendler Dep.") at 53. Lori Schumacher testified at her deposition that she did not remember whether paragraph nineteen was completed when she signed the Agreement. Continental's Brief, Exhibit D, at 10, 27. The copy of the Agreement attached to the Motion for Class Certification has "Central Montgomery Abstract" inserted on the blank line in paragraph nineteen. Mot. for Certif., Exh. D.

Chadwick Harp, who was a law student in 1996, assisted plaintiffs with the financial aspects of the purchase of their home. Mr. Harp testified at his deposition that he told Mr. Rendler and Ms. Schumacher that they had the right to choose a title insurance company under RESPA. Continental's Brief in Opposition, Exh. E, ("Harp Dep.") at 20. In January and February 1996, Mr. Rendler and Mr. Harp received quotes for title insurance which were approximately $200.00 less than the $822.03 which plaintiffs paid for title insurance from CMAC. Mot. for Certif. at 5.

Believing that no title insurer had been chosen for plaintiffs, Mr. Harp called Ms.

---

1. CMAC was originally named as a defendant in this suit, but was dismissed as a defendant by stipulation on March 12, 1997.

2. At oral argument, and in the Motion to Amend Class Definition, plaintiffs contended that the Complaint encompasses the claim that "the inclusion of a title authorization in the Agreement of Sale is, in itself, a violation of RESPA," regardless of defendants' policy and practice on choosing the title insurer. *See* N.T. of February 25, 1998 at 6–9; Mot. to Amend Class Def'n at 2.

Shetty in February 1996 on plaintiffs' behalf to give her the name of plaintiffs' title insurance company. Harp Dep. at 54–55. According to Mr. Harp's affidavit and deposition, Ms. Shetty told him that title insurance had already been ordered pursuant to the Agreement of Sale, and could not be changed. Mot. for Class Certif., Exhibit F ("Harp Aff.") at ¶ 5 and Harp Dep. at 54–55. Mr. Harp informed Ms. Shetty that the Agreement violated plaintiffs' rights under RESPA, and that she was "officially denying Rob and Lori's ability to choose their own title insurance." Harp Aff. at ¶ 5. Settlement was held on March 27, 1996.

On February 18, 1996, plaintiffs filed this action, claiming that defendants had violated their right under RESPA to choose their own title insurer. Mr. Harp, who subsequently became an attorney, has a referral agreement with plaintiffs' attorney and testified at his deposition that he will receive fifteen or twenty percent of the attorney fees in the case. Harp Dep. at 65–66.

On November 17, 1997, plaintiffs filed the instant Motion for Class Certification. Following oral argument, plaintiffs filed the Motion to Amend Class Definition. In the Motion to Amend Class Definition, plaintiffs propose that the Court certify the following class:

> All persons and entities (excluding defendants and their subsidiaries, affiliates, divisions, parent entities and the employees thereof) who (a) from on or after February 18, 1996 closed on the purchase of a residential dwelling from the Gambone Organization; (b) purchased that dwelling with the assistance of a "federally-related mortgage loan" as defined by the Real Estate Settlement Procedures Act; (c) obtained title insurance from a title company selected by the Gambone Organization where such authorization was contained in the Agreement of Sale; and (d) paid their own title insurance charges.

## II. Legal Analysis

### A. Standards for Class Certification

A class action suit is appropriate when the "issues involved are common to the class as a whole." *Califano v. Yamasaki*, 442 U.S. 682, 700–01, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979). Under those circumstances, the certification of a class may both promote judicial economy and save resources for parties who may otherwise repeatedly litigate the same issue. *Id.* at 701, 99 S.Ct. 2545. For the Court to certify a plaintiffs' class, plaintiffs must satisfy the four prerequisites for a class action set forth in Federal Rule of Civil Procedure 23(a) and one of the requirements in Rule 23(b). *See Hanrahan v. Britt*, 174 F.R.D. 356, 361 (E.D.Pa.1997).

The elements of Rule 23(a) are:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a) (1997). These four requirements are typically referred to as "numerosity, commonality, typicality, and adequacy of representation" respectively. *Hanrahan*, 174 F.R.D. at 361.

Plaintiffs must also establish that the putative class action meets one of the conditions of Federal Rule of Civil Procedure 23(b): (1) separate actions must create the risk of "inconsistent or varying adjudications ... which would establish incompatible standards of conduct" or would be dispositive of the interests of other prospective class members not parties to the litigation; or (2) the party opposing the class must have acted "on grounds generally applicable to the class;" or (3) "the court [must] find[ ] that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to the available methods for the fair and efficient adjudication of the controversy." F.R.Civ.P. 23(b). Plaintiffs contend that the factual situation in this case meets all of the conditions in Rule 23(b) and that the proposed class may be certified under any of its provisions.

### B. Federal Rule of Civil Procedure 23(a) Prerequisites

#### 1. Numerosity

 There are no absolute limits to the numerosity requirement. *General Telephone Co. v. EEOC,* 446 U.S. 318, 330, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980). Classes in excess of one hundred members are typically found to satisfy the numerosity requirement. *Weiss v. York Hospital,* 745 F.2d 786, 808 n. 35 (3d Cir.1984) *cert. denied* 470 U.S. 1060, 105 S.Ct. 1777, 84 L.Ed.2d 836 (1985) *quoting* 3B J. Moore, Moore's Federal Practice P. 23.05[1], at 23–150 (2d ed. 1982).

 Plaintiffs estimate the class size at "several hundred," given the number of people who purchased homes from defendants using the same sales agreement within the one year statute of limitations for claims under RESPA. *See* 12 U.S.C. § 2614. Defendants have not disputed that the class would meet the numerosity requirement. The Court concludes that plaintiffs' proposed class satisfies the numerosity requirement of Rule 23(a)(1).

#### 2. Commonality

 Only one common question of law or fact is necessary to fulfill the commonality requirement. *Baby Neal ex rel. Kanter v. Casey,* 43 F.3d 48, 56 (3d Cir.1994). Defendants contend that commonality does not exist because different oral representations were made to purchasers, and purchasers signed agreements of sale with varied levels of understanding about their rights under RESPA. Thus, according to defendants, determining whether defendants required the selection of a particular title insurer will make separate adjudications necessary for each member of the proposed class.

The Court disagrees with defendants' assertions. The common questions of law and fact in this case include whether incorporation of the title insurer authorization in the Agreement was a violation of RESPA and whether defendants' policy and practice with respect to the selection of a title insurer violated RESPA. Therefore, the Court con-

cludes that plaintiffs have satisfied the commonality prerequisite for class certification.[3]

#### 3. Typicality

 The typicality requirement addresses some of the same concerns as commonality, although the typicality test "examines the relationship of facts and issues between the representative and the class." Newberg and Conte, *Newberg on Class Actions* § 3.22 at 3–127 (3d ed. 1992). "Typicality asks whether the named plaintiffs' claims are typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class." *Baby Neal,* 43 F.3d at 55. To evaluate typicality, the Court should consider whether "the named plaintiff's individual circumstances are markedly different or ... the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based." *Eisenberg v. Gagnon,* 766 F.2d 770, 786 (3d Cir.1985) *cert. denied* 474 U.S. 946, 106 S.Ct. 342, 88 L.Ed.2d 290 (1985).

 Defendants argue that plaintiffs' claims are not typical for two reasons. First, because Mr. Rendler testified that the line for the name of the title insurer in paragraph nineteen was blank when he signed the Agreement and this is contrary to the alleged "policy and practice" of defendants in completing the Agreement and second, because plaintiffs unsuccessfully attempted to change their title insurer three months after signing the Agreement, and there is no evidence that other class members asked to change their title insurer.

Defendants also argue that plaintiffs' circumstances are not typical because unique defenses may be brought against them, specifically that plaintiffs do not have standing to bring this suit and that credibility issues regarding Chadwick Harp make plaintiffs' claims atypical.

##### a. The Contention that Plaintiffs' Claims Are Atypical

At oral argument, plaintiffs' attorney stated that plaintiffs' theory of the case was not

---

**3.** The issue of whether common issues predominate, a condition set forth in Federal Rule of Civil Procedure 23(b)(3) is discussed, *infra,* in Section II.C.

affected by Mr. Rendler's testimony that paragraph nineteen was not completed when he signed the Agreement. N.T., February 25, 1998 at 16. The Complaint does not mention that the line for the name of the title insurer in paragraph nineteen was blank or that defendants would not allow plaintiffs to change title insurers after the Agreement was signed. To the contrary, the allegations of the Complaint are more general and appear to be typical of the claims of the class. Moreover, the Court retains jurisdiction over class certification, *see* F.R.Civ.P. 23(c)(2), and if it appears that plaintiffs' theory of the case relies upon Mr. Rendler signing the Agreement when the line in paragraph nineteen for the name of the title insurer was blank or upon plaintiffs' request to change the title insurer, the Court will reconsider its ruling.

### b. The Contention that Unique Defenses Against Plaintiffs Defeat Typicality

#### i. Standing

■ Defendants contend that plaintiffs do not have standing to bring this suit because their mortgage was not "federally related" and therefore is not subject to the provisions of RESPA. *See* 12 U.S.C. § 2608(a) ("No seller of property that will be purchased with the assistance of a federally related mortgage loan shall require ..."). As the standing argument is a unique defense against plaintiffs' suit, defendants argue that plaintiffs are not adequate class representatives. In determining whether a unique defense means that the named plaintiffs' claims are not typical, the Court looks to whether the defense will be a "major focus" of the litigation. *See Deutschman v. Beneficial Corp.,* 132 F.R.D. 359, 373 (D.Del.1990).

"Federally related" is defined in RESPA as, *inter alia:*

> any loan (other than temporary financing such as a construction loan) which ... (i) is made in whole or in part by any lender the deposits or accounts of which are insured by any agency of the Federal Government, or is made in whole or in part by any lender which is regulated by any agency of the Federal Government; or (ii) is made in whole or in part, or insured, guaranteed, supplemented, or assisted in any way, by the Secretary or any other officer or agency of the Federal Government or under or in connection with a housing or urban development program administered by the Secretary or a housing or related program administered by any other such officer or agency....

12 U.S.C. § 2602(1)(B)(i)–(ii).

■ In this case, plaintiffs obtained a mortgage from Cardinal Financial Company, Ltd., through a Pennsylvania state program for first time home owners, the Single Family Homeownership Program ("the Program"). The mortgage was initially provided by Cardinal Financial, but was assigned to the Pennsylvania Housing Finance Agency ("PHFA") within a month after settlement. Defendants argue that Cardinal Financial provided "temporary financing" and PHFA was the true source of the mortgage. Because the booklet describing the Program states that all funding comes from state tax-free bonds, *see* Continental Brief, Exhibit B, defendants argue that plaintiffs' mortgage is not "federally related."

However, the booklet describing the Program also states that: "Because these bonds are tax-exempt, the Federal government sets the requirements of the program." *See* Continental's Brief, Exhibit B. In addition, Cardinal Financial issued a thirty year mortgage to plaintiffs, *see* Motion for Class Certification, Exh. E. The federal regulations for RESPA state that: "If a lender issues a commitment for permanent financing, with or without conditions, the loan is covered by this part." 24 C.F.R. § 3500.5(b)(3) (1997).

Based on the current state of the record, the Court concludes that plaintiffs' mortgage was "federally related," and plaintiffs have standing to bring this action. Furthermore, it appears that standing will not be a "major focus of the litigation," and the issue is not sufficient to make plaintiffs' circumstances atypical.

#### ii. Chadwick Harp

Defendants contend that because Mr. Harp has a referral agreement, he is not an uninterested witness in this case. According to defendants, the questions about Mr. Harp's credibility are unique to plaintiffs'

case, do not apply to other members of the class, and thus make plaintiffs' claims atypical.

The focus of the typicality prerequisite is on defendants' behavior towards the named plaintiffs and the members of the class. *Deutschman*, 132 F.R.D. at 373. Issues of Mr. Harp's credibility do not impact on the question of whether defendants acted in the same way towards all members of the proposed class. Plaintiffs have asserted that defendants' policy and practice with regard to completing the title insurance authorization in the Agreement of Sale violated RESPA. Mr. Harp's testimony does not address this issue. The alleged problems with Mr. Harp's credibility do not make plaintiffs' claims or circumstances atypical.

Thus, the Court concludes that plaintiffs have satisfied the typicality prerequisite for certification of a class.

### 4. Adequacy

The adequacy of the class representative has two components. First, does the representative have interests antagonistic to the interests of the class and second, is the representative's counsel competent to try a class action? *See In re General Motors Corp. Pick–Up Truck Fuel Tank*, 55 F.3d 768, 800–01 (3d Cir.1995).

Defendants have not questioned the adequacy of plaintiffs' attorney, but have questioned whether varying facts and credibility issues make plaintiffs' interests compatible with those of class members. Defendants have argued that the issues of Mr. Harp's credibility, Mr. Rendler's testimony, and plaintiffs' standing to bring suit, described *supra*, make plaintiffs inadequate to represent the class.

In assessing adequacy of a class representative, the court must determine that "he is a member of the class and possesses the same interest and suffers the same injury as the class members." *Deutschman*, 132 F.R.D. at 374. In this case, plaintiffs have the same interests as other class members—*recovering any damages to which they may be entitled under RESPA*. If defendants'

policy and practice violate RESPA as alleged by plaintiffs, then they and other members of *the class have suffered the same injury by being denied their right to choose title insurers.* Thus, the Court concludes that plaintiffs have satisfied the adequacy prerequisite for class certification.

### C. Application of Rule 23(b) Requirements

In addition to satisfying the prerequisites of Federal Rule of Civil Procedure 23(a), plaintiffs must also meet one of the conditions in Federal Rule of Civil Procedure 23(b). In this case, the Court will certify the class under Rule 23(b)(3) which requires both that "questions of law or fact common to members of the class predominate over any questions affecting only individual members" and that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." F.R.Civ.P. 23(b)(3) (1997).

#### 1. Predominance of Common Questions

"Numerous courts have found common questions to predominate, where, as here, the litigation will concern 'similar or standardized oral representations contain[ing] significant legal or factual questions which are common to the class.'" *Hanrahan*, 174 F.R.D. at 365 *quoting Zacharjasz v. Lomas and Nettleton Co.*, No 87–4303, 1988 WL 54066 at \*5 (E.D.Pa. May 23, 1988). This case concerns whether defendants' policy and practice with regard to the selection of a title insurer violated RESPA. These questions will be similar for all members of the class.

Rather than hearing claims individually, a class action is the superior form for adjudicating the many issues common to the class members. Any individual issues of reliance and the issue of damages can be "resolved through a 'variety of mechanisms, including questionnaires, separate hearings, or special masters, if needed.'" *Hanrahan*, 174 F.R.D. at 365 *quoting Bell Atlantic Corp. Sec. Litig.*, No. 91–514, 1995 WL 733381 at \*5 (E.D.Pa. Dec. 11, 1995). In addition, the dearth of case law on the provision of RESPA at issue makes this case particularly well suited for a class action, rather than multiple, potentially

inconsistent, adjudications. *See Weisberg v. Toll Bros.*, 617 F.Supp. 539, 541 (E.D.Pa. 1985) ("The case involves a claim brought under a seldom litigated statute, and it appears that it is the first class action brought under the provisions of RESPA."). Thus, the Court concludes that common questions of law or fact predominate over individual questions, and plaintiffs have satisfied the conditions of Federal Rule of Civil Procedure 23(b)(3).

### D. Definition of the Class

 "Care should be taken to define the class in objective terms capable of membership ascertainment when appropriate, without regard to the merits of the claim or the seeking of particular relief. Such a definition ... does not require the court to engage in an impermissible consideration of the merits of the claims in connection with its class certification determination." *Newberg on Class Actions* at § 6.14; *see, also, Forman v. Data Transfer, Inc.*, 164 F.R.D. 400 (E.D.Pa.1995).

In this case, plaintiffs have asked the Court to certify a class of purchasers whose title insurers were "selected" by defendants. *See* Mot. to Amend Class Certif. at 1. To determine the parameters of a class so defined, the Court would be required to reach the merits of plaintiffs' claims—whether defendants required purchasers to use particular title insurers and thereby violated their rights under RESPA.

Rather, the Court will exercise its discretion to amend the class definition, *sua sponte, see Newberg on Class Actions* at § 6.17; *Bullick v. City of Philadelphia*, 110 F.R.D. 518 (E.D.Pa.1986), and substitute the word "suggested" for the word "selected." This reserves determination on the merits to an appropriate time in the proceedings. In addition, the Court has deleted the phrase "Gambone Organization," as it is a creation of plaintiffs. In clause (a), the Court has substituted the names of the various Gambone companies for "Gambone Organization." *See* Mot. for Class Certif. at 1. In clause (c), the word "defendants" is used instead of "Gambone Organization." Thus, the class is defined as:

All persons and entities (excluding defendants and their subsidiaries, affiliates, divisions, parent entities and the employees thereof) who (a) from on or after February 18, 1996 closed on the purchase of a residential dwelling from Gambone Brothers Development Company, Gambone Brothers Construction Company, Gambone Brothers Enterprises, Inc. or their parent, subsidiary and affiliated corporations, partnerships and entities; (b) purchased that dwelling with the assistance of a "federally-related mortgage loan" as defined by the Real Estate Settlement Procedures Act; (c) obtained title insurance from a title company suggested by defendants where such authorization was contained in the Agreement of Sale; and (d) paid their own title insurance charges.

### III. Conclusion

 The Court notes that the certification of a class is not a final order, and the Court retains jurisdiction over this issue until a decision on the merits is reached. *See* Fed.R.Civ.P. 23(c)(2)("An order under this subdivision may be conditional, and may be altered or amended before the decision on the merits.") "[T]he Committee Notes on Rule 23 envision modification of a class certification 'if, upon fuller development of the facts, the original determination appears unsound.'" *Zenith Laboratories v. Carter-Wallace*, 530 F.2d 508, 512 (3d Cir.1976) *cert. denied* 429 U.S. 828, 97 S.Ct. 85, 50 L.Ed.2d 91 (1976). As the case progresses, the Court will evaluate whether the prerequisites for class certification are satisfied, and will act accordingly if they are not.

At this time, plaintiffs have satisfied the requirements for class certification. For the foregoing reasons, the Court certifies the class as defined, *infra*.