**In re ART MATERIALS ANTITRUST LITIGATION.**

**MDL No. 436.**

United States District Court,
N.D. Ohio, E.D.

Nov. 18, 1983.

S. Lee Kohrman, Kohrman, Jackson & Weiss, Cleveland, Ohio, for private entity plaintiffs.

M. Neal Rains, Arter & Hadden, Cleveland, Ohio, for governmental entity plaintiffs.

James M. Porter, Eric M. Oakley, Squire, Sanders & Dempsey, Cleveland, Ohio, for all defendants.

### PRETRIAL ORDER NO. 21
KRUPANSKY,* Circuit Judge.

Plaintiffs and defendants have tendered to the court for approval pursuant to Federal Rules of Civil Procedure 23(e) settlements with all defendants in the aggregate amount of $6,885,000 (plus accruing interest) as follows: (1) Stipulation of Settlement with The Milton Bradley Company

* Of the United States Court of Appeals for the Sixth Circuit, sitting by designation.

dated May 29, 1981; (2) Stipulation of Settlement with the Joseph Dixon Company dated June 18, 1981; (3) Stipulation of Settlement with Binney & Smith, Inc. dated June 24, 1983; and, (4) Stipulation of Settlement with American Art Clay Co., Inc. dated July 1, 1983.

By Order dated April 1, 1983, this court certified a class defined as—

All individuals, proprietorships, partnerships, corporations, and other business entities which have, from January 1, 1964 to August 31, 1979, purchased Art Materials directly from one or more of the defendant corporations, but specifically excluding: (i) any federal, state, local government or governmental entity purchasers; and (ii) any defendant or other manufacturer of Art Materials, and any subsidiary or affiliate of any defendant or other manufacturer of Art Materials.[1]

A notice of the class action and proposed settlements was approved by Pretrial Order No. 18, issued July 14, 1983, and served August 1, 1983 on over 19,000 potential class members. Notice in summary form was also published in the August 8, 1983 national edition of the Wall Street Journal. As of the September 19, 1983 cut-off date, only fifty entities (.26%) had opted out of the class.

The notice to the class and publication notice advised class members of a hearing to be conducted by this court to investigate the fairness, reasonableness and adequacy of the settlements. The hearing date was scheduled for October 24, 1983 and class members were informed of their right to be heard by the court with respect to the settlements. September 19, 1983 was the last date on which a class member could file an objection to the proposed settlement and thereby secure the right to participate at the hearing. No objection was filed with the court. The hearing was continued until October 28, 1983, at which time no objections were heard.

The settlements aggregate $6,885,000 in principle amount, and provide for interest from the date of settlement. The accrued interest has created a fund with the current value of $7,500,000. This amount represents less than 4.3% of defendants' art material sales during the focus years 1973 through 1976. The settlement is equivalent to approximately 40% of the estimated damage exposure of the defendants and is 68% of the defendants' *profits* on the challenged sales during the focus period. (Plaintiffs have noted that, when the amounts defendants have paid to settle the federal litigations are considered, defendants ultimately will have been forced to disgorge 92% of the profits obtained from the alleged antitrust violations during the focus years.)

"[T]he law generally favors and encourages the settlement of class actions." *Franks v. Kroger Co.,* 649 F.2d 1216, 1224 (6th Cir.1981), *vacated on other grounds and modified,* 670 F.2d 71 (6th Cir.1982). *See Weinberger v. Kendrick,* 698 F.2d 61, 73 (2d Cir.1982); *Dawson v. Pastrick,* 600 F.2d 70, 75 (7th Cir.1979); *Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir.1977); *Van Bronkhorst v. Safeco Corp.,* 529 F.2d 943, 950 (9th Cir.1976). Settlements and "[c]onsent decrees may produce more favorable results than more sweeping judicially imposed orders that might risk opposition and resistance ... [they] also reduce the cost of litigation [and] engender judicial economy". *Stotts v. Memphis Fire Department,* 679 F.2d 541, 555 (6th Cir.1982), *cert. granted sub nom Firefighters Local Union No. 1784 v. Stotts,* —— U.S. ——, 103 S.Ct. 2451, 77 L.Ed.2d 1331 (1983).

Approval of a proposed class action settlement requires the court to make a finding that the settlement is "the result of good-faith arms-length negotiations". *Stotts v. Memphis Fire Dept.,* 679 F.2d at 551. *See Weinberger v. Kendrick,* 698 F.2d at 74; *United States v. Miami,* 614 F.2d 1322, 1330–31 (5th 1980), *aff'd in pertinent*

---

1. For purposes of this lawsuit, art materials have been defined as crayons, paints, colors, glazes, chalks, water colors, tempera, oil paints, clay, finger paints, poster paints, varnishes and brushes.

*part on reh.,* 664 F.2d 435 (5th Cir.1981); *Flinn v. F.M.C. Corp.,* 528 F.2d 1169, 1173 (4th Cir.1975), *cert. denied,* 424 U.S. 967, 96 S.Ct. 1462, 47 L.Ed.2d 734 (1976); substantively, the district court must also conclude whether the settlement is reasonable, adequate, and fair before it can approve it, as required by Federal Rule of Civil Procedure 23(e). *Officers For Justice v. Civil Service Comm'n,* 688 F.2d 615, 625 (9th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1219, 75 L.Ed.2d 456 (1983); *In re Corrugated Container Antitrust Litigation,* 643 F.2d 195, 207 (5th Cir.1981) *cert. denied sub nom., CFS Continental Inc. v. Adams Extract Co.,* 456 U.S. 998, 102 S.Ct. 2283, 73 L.Ed.2d 1294 (1982), *cert. also denied sub nom. Three J. Farms, Inc. v. Adams Extract Co.,* 456 U.S. 1012, 102 S.Ct. 2308, 73 L.Ed.2d 1309 (1982). *See also Stotts v. Memphis Fire Department,* 679 F.2d at 552; *Culbreath v. Dukakis,* 630 F.2d 15, 23 (1st Cir.1980); *Metropolitan Hous. Dev. Corp. v. Village of Arlington Heights,* 616 F.2d 1006, 1014 (7th Cir.1980); *United States v. Miami,* 614 F.2d at 1331–34; *Cotton v. Hinton,* 559 F.2d at 1330. This reasonableness determination is an issue of law. *Stotts v. Memphis Fire Department,* 679 F.2d at 552. *See Setser v. Novack Invest. Co.,* 657 F.2d 962, 969 (8th Cir.1981), *cert. denied,* 454 U.S. 1064, 102 S.Ct. 615, 70 L.Ed.2d 601 (1981). The determination does not require, and the court should not indulge in, speculation as to the merits of the controversy and the particular facts which underlay the legal positions espoused by the litigants. *See Swift & Co. v. United States,* 276 U.S. 311, 324, 48 S.Ct. 311, 314, 72 L.Ed. 587 (1928). "Instead, the court should merely satisfy itself that the decree is reasonable." *Stotts,* 679 F.2d at 553. The merits of the action are not, however, irrelevant to the reasonableness determination. As stated by plaintiffs: "Determining whether a settlement is fair, reasonable and adequate requires examination of an amalgam of factors, principal of which is comparison of 'the terms of the compromise with the likely rewards of litigation'". *Private Entity Plaintiffs' Memorandum in Support of Settlements quoting Weinberger v. Kendrick,*

698 F.2d at 73. In this sense, then, the obligation of the district court to scrutinize a proposed class action settlement is not far removed from the nature of the task faced by a bankruptcy court in the evaluation of a proposed reorganization plan. In *Protective Comm. for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424–25, 88 S.Ct. 1157, 1163, 20 L.Ed.2d 1 (1968), the Supreme Court characterized the process thus:

> The fact that courts do not ordinarily scrutinize the merits of compromises involved in suits between individual litigants cannot affect the duty of a bankruptcy court to determine that a proposed compromise forming part of a reorganization plan is fair and equitable. *In re Chicago Rapid Transit Co.,* 196 F.2d 484 (C.A. 7th Cir.1952). There can be no informed and independent judgment as to whether a proposed compromise is fair and equitable until the bankruptcy judge has apprised himself of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated. Further, the judge should form an educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise. Basic to this process, in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of litigation.

Various courts have attempted to specify factors to be considered prior to a decision upon the reasonable, fair and adequate nature of a proposed class action settlement. *Malchman v. Davis,* 706 F.2d 426, 433–34 (2d Cir.1983) (nine factors); *Reed v. General Motors Corp.,* 703 F.2d 170, 172 (5th Cir.1983) (six factors); *Officers For Justice v. Civil Service Commission,* 688 F.2d 615, 625 (9th Cir.1982) (twelve factors), *cert. denied* —— U.S. ——, 103 S.Ct. 1219, 75 L.Ed.2d 456 (1983). *Stotts v. Memphis Fire Dept.,* 679 F.2d 541, 552–54 (6th Cir.1982)

(eight factors); *In re Corrugated Container Antitrust Litigation,* 643 F.2d 195, 207 (5th Cir.1981) (three factors); *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir. 1974) (nine factors). What these varied articulations of the district court's evaluative parameters demonstrate is not that class action settlements may be easily measured against a precise set of legal axioms, but that "[t]he court should be guided by other factors, the relevancy of which will vary from case to case" and "[b]ased upon a thorough analysis of these factors, the Court 'should explain why it is either approving or disapproving the settlement.'" *Ohio Pub. Interest Campaign v. Fisher Foods,* 546 F.Supp. 1, 6–7 (N.D.Ohio 1982), *quoting In re Corrugated Container Antitrust Litigation,* 643 F.2d at 217.

■ Remembering that, while proponents of the settlement bear the burden of proof with regard to the approval of the agreement, *Grunin v. International House of Pancakes,* 513 F.2d 114, 123 (8th Cir.) *cert. denied,* 423 U.S. 864, 96 S.Ct. 124, 46 L.Ed.2d 93 (1975), they should not be required to stage (and the court should not be compelled to suffer) a trial on the merits, the event which the settlement aims to preclude, *see e.g. Reed v. General Motors Corp.,* 703 F.2d at 172, the plaintiffs suggest that the circumstances of this case favor "considerable deference to counsel's opinion regarding the adequacy of the settlement". The suggestion is not without legal support, as proposed by counsel for plaintiffs:

> In lieu of a more extended inquiry into the claims asserted and results achieved by plaintiffs, courts have focused on the "negotiating process by which the settlement was reached." *Weinberger [v. Kendrick]* 698 F.2d at 74. The courts have thus insisted that settlement be the result of "arms-length negotiation" effected by counsel possessed of "experience and ability ... necessary to effective representation of the class's interests." *Id.*
> In analyzing the negotiations, the trial court though is "entitled to rely upon the judgment of experienced counsel for the parties." *Cotten [sic: Cotton v. Hinton ],*

559 F.2d at 1330. Opinion of such counsel "is to be given great weight by the Court." *Ohio [Pub. Interest Campaign v. Fisher Foods ],* 546 F.Supp. at 11. Indeed, unless there is evidence of "fraud, collusion or the like," the court should "be hesitant to substitute its own judgement for that of counsel." *Ohio [Pub. Interest Campaign v. Fisher Foods ],* 546 F.Supp. at 6; *see Flinn v. FMC Corp.,* 528 F.2d 1169, 1173 (4th Cir.1975), *cert. denied,* 424 U.S. 967 [96 S.Ct. 1462, 47 L.Ed.2d 734] (1976).

■ This proposition is not without its attractions; its acceptance would go far to alleviate the burdens placed upon the judiciary to evaluate the proposed class action settlements as to their fairness, reasonableness and adequacy. However much this court respects the professional judgment of the highly experienced counsel involved in this litigation, the court is convinced that, while the informed opinions of plaintiff and defense counsel to this action are not without significant weight, the proposed settlements must be independently evaluated within the confines of the case at bar—such is the nature of the judicial function.

Fortunately for the court, the requisite evaluation is simplified by the unique circumstances of this case. First, the record bespeaks the professionalism of all counsel in pursuit of an acceptable settlement negotiated in good faith and at arms-length.

■ Plaintiffs' counsel approached the settlement negotiations utilizing the traditional focus on a four year segment of the alleged conspiracy period. Restriction to a four year term is the result of the statutory limitations period governing antitrust class action claims. "[I]n most of the settlements approved in other class action antitrust cases, the period has been 4 years which is the statute of limitation for such actions". *City of Detroit v. Grinnell Corp.,* 356 F.Supp. 1380, 1386 (S.D.N.Y.1972), *rev'd on other grounds,* 495 F.2d 448 (2d Cir. 1974). Thus, federal courts recognize the appropriateness of restricting settlements to a four year focus period. *See e.g. In re Anthracite Coal Antitrust Litigation,* 79 F.R.D. 707, 714 (M.D.Pa.1978). Further, de-

spite the fact that a successful plaintiff would be entitled to treble damages, because of the recognized difficulties of proof and requirements of a costly trial on the merits, "the vast majority of courts which have approved settlements in [antitrust class actions] ... have given their approval to settlements which are traditionally based on an estimate of single damages only". *City of Detroit v. Grinnell Corp.*, 495 F.2d at 458.

■ In this case, the focus period selected was 1973–1976. These years coincide with the terminal year alleged in the related federal indictment; 1976 was also the year in which Milton Bradley ceased the manufacture of art materials. Accordingly, it was reasonable and proper for counsel to focus on the term selected.

Because the matter at bar is the proposed settlement of this action, it is unnecessary for the court to detail and review the actual settlement process. However, the court notes that the brief description of the progress of the settlements, presented by plaintiffs in their brief in support of the settlements, fairly and adequately reflects the actual settlement process.

■ A second factor considered by this court to be of significance in its evaluation of the proposed settlements is the actual payout. The fund generated by the settlements represents over sixty-eight percent of the profits attributable to the defendants' sales of art materials during the focus years. It is also remarkable that the settlements as proposed would effect a recovery of 4.3 percent of the alleged overcharge which the conspiracy assertedly enabled defendants to apply to the prices of art materials. This percentage exceeds the normative range of recovery attained in settlements of other antitrust price fixing cases.

Further, as previously noted, the proposed settlements along with the federal litigation settlements require defendants to ultimately disgorge ninety-two percent of all of their profit allegedly realized as a result of the conspiracy. This factor alone strongly commends the approval of these proposed settlements. Considering that defendants would lose nearly all of the profit associated with the conspiracy, it is unlikely that a more adequate settlement of this action was possible.

A third relevant factor important to the consideration of the settlements is that without them, in order to obtain a greater recovery, the plaintiffs would face a very complex, difficult and costly trial on the merits, pursuant to which success could not be guaranteed.

Finally, the reaction of the putative class assures the court that approval of the settlements is warranted in this case. Only fifty entities, or .26% of the class, have opted to exclude themselves from the action and none, not even the opt-outs, have raised any objection to or reservation about the settlements as proposed. Because the class approaches 19,000 members and includes some of the largest and most sophisticated business and retail organizations in the nation, some with their own antitrust departments, this unanimous approval of the proposed settlements by the class members is entitled to nearly dispositive weight in this court's evaluation of the proposed settlements.

Consistent with the foregoing, the court being fully advised on the matter, and upon the entire record herein, it is hereby ORDERED as follows:

1. The court hereby approves the terms of the Settlement Agreements and finds them to be fair, reasonable and adequate;

2. The court finds that all potential class members were served with notice of the proposed Settlement Agreements and the hearing thereon, either directly or by publication;

3. Each plaintiff and member of the class, who has not timely excluded itself, is deemed to have covenanted and agreed to forever refrain from instituting, maintaining, or proceeding against defendants on any claim, demand, action, cause of action or liability of any nature whatsoever, which it now has or has asserted against any defendant, and which is based upon allegations of collusion, combination or conspiracy or other

conduct which might have been asserted under any federal or state antitrust law with respect to any purchases of art materials as hereinabove defined, during the period from January 1, 1964 to August 31, 1979;

4. This action is dismissed with prejudice. All claims of the plaintiffs and the members of the class against defendants arising under the antitrust laws of the United States which have been asserted in this action and which relate to or arise out of the unlawful combination and conspiracy to fix, raise, maintain and stabilize the prices of art materials alleged in the complaints on file herein, covering the period January 1, 1964 to August 31, 1979, are dismissed with prejudice;

5. This court reserves jurisdiction over the implementation of the settlements, including without limitation, the approval of a final plan of distribution, resolution of disputed claims by any class member and the award of any additional expenses; and,

6. There being no just reason for delay, the Clerk of the Court is directed to enter this judgment as a final judgment pursuant to Fed.R.Civ.P. 54(b).

IT IS SO ORDERED.