## In re LINERBOARD ANTITRUST LITIGATION.

### This Document Relates To All Actions (Civil Action Nos. 98–5055, 99–1341).

### MDL No. 1261.

United States District Court,
E.D. Pennsylvania.

Aug. 26, 2003.

As Amended Sept. 3, 2003
and Sept. 24, 2003.

Howard L. Langer, Golomb Honik & Langer, P.C., Philadelphia, PA, Lead Counsel for Box Plaintiff and Liason Counsel for all plaintiffs.

Eugene A. Spector, Jeffrey J. Corrigan, Spector Roseman & Kodroff, Philadelphia, PA, Michael J. Freed, Steven A. Kanner, William London, Much Shelist Freed Denenberg Ament & Rubenstein, P.C., Chicago, IL, for General Refractories Company and Co-Lead Counsel for Corrugated Sheet Plaintiffs.

Robert J. LaRocca, Kohn, Swift & Graf, P.C., Philadelphia, PA, H. Laddie Montague, Martin Twersky, Berger & Montague, P.C., Philadelphia, PA, Roberta D. Liebenberg, Donald L. Perelman, Fine Kaplan & Black, Philadelphia, PA, W. Joseph Bruckner, Lockridge Grindal Nauen PLLP, Minneapolis, MN, Counsel for Box Plaintiffs, Oak Valley Farms, Inc., Garrett Paper, Inc. and Local Baking Products, Inc.

Mark Reinhardt, Mark Wendorf, Reinhardt & Anderson, St. Paul, MN, for Albert I. Halper Corrugated Box Company.

Sherry Swirsky, Schnader, Harrison, Segal & Lewis, LLP, Philadelphia, PA, for Defendants.

Douglas J. Kurtenbach, Kirkland & Ellis, Chicago, IL, for Tenneco, Inc., Tenneco Packaging and Packaging Corporation of America.

Steven J. Harper, Steven C. Seeger, Kirkland & Ellis, Chicago, IL, Daniel B. Huyett, Matthew W. Rappleye, Stevens & Lee, Reading, PA, for Defendants Interna-

tional Paper Company and Union Camp Corporation.

James H. Schink, Kirkland & Ellis, Chicago, IL, for Weyerhaeuser Corporation.

R. Mark McCareins, Dane A. Drobny, Michael J. Mayer, Andrew D. Shapiro, Winston & Strawn, Chicago, IL, for Jefferson-Smurfit Corp. and Smurtit-Stone Container Corp.

Richard C. Rizzo, Jennifer R. Clarke, Will W. Sachse, Dechert, Philadelphia, PA, for Temple-Inland, Inc. and Gaylord Container Corporation.

Edward M. Posner, Paul H. Saint-Antoine, Drinker Biddle & Reath, Thomas G. Slater, Jr., Hunton, & Williams, Richmond, VA, for Georgia-Pacific Corporation.

### MEMORANDUM

DuBOIS, District Judge.

## I. INTRODUCTION

Presently before the Court is Class Plaintiffs' Motion for Final Approval of Settlement Agreement Between the Class and Temple–Inland, Inc. and Gaylord Container Corporation ("Motion for Final Approval of the Settlement Agreement"). A hearing on the Motion was held on August 8, 2003. For the reasons that follow, the Court grants the Motion and approves the Settlement Agreement between the classes as certified by the Court and Temple–Inland, Inc. and Gaylord Container Corporation.

## II. BACKGROUND

### A. FACTUAL AND PROCEDURAL BACKGROUND

The Court sets forth only an abbreviated factual and procedural history as pertinent to the Motion for Final Approval of the Settlement Agreement. The factual background of the case is described at length in this Court's Memorandum dated October 4, 2000 denying defendants' Motion to Dismiss, its Memorandum dated September 4, 2001 certifying classes of direct purchasers of corrugated boxes and corrugated sheets, and the Opinion of the Court of Appeals for the Third Circuit affirming the September 4, 2001 Memorandum and Order. *See In re Linerboard Antitrust Litig.*, MDL 1261, 2000 WL 1475559, at *1–3 (E.D.Pa. Oct. 4, 2000) (*"Linerboard I"*); *In re Linerboard Antitrust Litig.*, 203 F.R.D. 197, 201–04 (E.D.Pa.2001) (*"Linerboard II"*); *In re Linerboard Antitrust Litig.*, 305 F.3d 145, 147–49 (3d Cir.2002) (*"Linerboard III"*).

This is an antitrust action involving allegations that a number of U.S. manufacturers of linerboard [1] engaged in a continuing combination and conspiracy in unreasonable restraint of trade and commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. The seven lawsuits transferred to this Court for all pretrial proceedings by the Judicial Panel on Multidistrict Litigation on February 12, 1999 were instituted after the Federal Trade Commission ("FTC") filed an administrative complaint against Stone Container Corporation which was resolved by a consent decree. *Linerboard I*, 2000 WL 1475559,

---

**1.** Linerboard includes any grade of paperboard suitable for use in the production of corrugated sheets, which are in turn used in the manufacture of corrugated boxes and for a variety of industrial and commercial applications. Corrugated sheets are made by gluing a fluted sheet which is not made of liner-

board, known as the corrugating medium, between facing sheets of linerboard; corrugated sheets are also referred to as containerboard. The defendants named in the instant lawsuits are major integrated manufacturers and sellers of linerboard, corrugated sheets and corrugated boxes.

at *1 (setting forth allegations in FTC complaint and details of consent decree). Class plaintiffs named twelve defendants in their Complaints—Stone Container Corporation, Jefferson Smurfit Corporation, Smurfit–Stone Container Corp., International Paper Company, Georgia Pacific Corporation, Temple–Inland, Inc., Gaylord Container Corporation, Tenneco, Inc., Tenneco Packaging, Inc., Union Camp Corporation, Packing Corporation of American and Weyerhaeuser Paper Company—and alleged that they conspired to raise the price of corrugated containers and corrugated sheets throughout the United States by restricting production and/or curtailing inventories in violation of federal antitrust laws.

By Memorandum and Order dated September 4, 2001, this Court certified the following two plaintiff classes:

**Class 1—Sheet Class**

All individuals and entities which purchased corrugated sheets in the United States directly from any of the defendants during the class period from October 1, 1993 through November 30, 1995, excluding the defendants, their co-conspirators, and their respective parents, subsidiaries and affiliates, as well as any government entities, and excluding those individuals and entities which purchased corrugated sheets pursuant to contracts in which the purchase price was not tied to the price of linerboard.

**Class 2—Box Class**

All individuals and entities which purchased corrugated containers in the United States directly from any of the defendants during the class period from October 1, 1993 through November 30, 1995, excluding the defendants, their co-

conspirators, and their respective parents, subsidiaries and affiliates, as well as any government entities, and excluding those individuals and entities which purchased corrugated containers pursuant to contracts in which the purchase price was not tied to the price of linerboard or containerboard.

*Linerboard II,* 203 F.R.D. at 224. On September 25, 2001, defendants filed a Petition for Leave to Appeal pursuant to Federal Rule of Civil Procedure 23(f)[2] in the Court of Appeals. By Order dated December 18, 2001, the Court of Appeals granted that petition. Thereafter, on September 5, 2002, the Court of Appeals affirmed the ruling of this Court. By Order dated October 16, 2002, the Court of Appeals denied defendants' petition for *en banc* review. On January 14, 2003, defendants filed a Petition for Writ of Certiorari to the United States Supreme Court. The petition was denied on April 21, 2003. *See Gaylord Container Corp. v. Garrett Paper, Inc.,* —— U.S. ——, 123 S.Ct. 1786, 155 L.Ed.2d 666 (2003) (No. 02–1070).

**B. THE SETTLEMENT AGREEMENT BETWEEN CLASS PLAINTIFFS AND TEMPLE–INLAND, INC. AND GAYLORD CONTAINER CORP**

Settlement discussions between class plaintiffs and defendants, Temple–Inland, Inc. and Gaylord Container Corporation ("settling defendants") began shortly after the Court of Appeals' September 5, 2002 opinion affirming this Court's Memorandum and Order dated September 4, 2001 certifying the plaintiff classes. The settlement negotiations were led by Howard Langer, Esq., lead counsel for the box class, and Temple–Inland, Inc.'s counsel,

---

2. Appellate review of an order of a district court granting or denying class action certification requires the permission of the Court of Appeals. Federal Rule of Civil Procedure 23(f) provides, in relevant part, as follows: "A court of appeals may in its discretion permit an appeal from an order of a district court granting or denying class action certification under this rule if application is made to it within ten days after entry of the order."

Jennifer Clarke, Esq. Discussions continued until a final settlement agreement was reached in principle on March 3, 2003. Thereafter, the parties drafted the terms of the Settlement Agreement and submitted it to the Court for preliminary approval on April 11, 2003. By Order dated April 14, 2003, the Court preliminarily approved the terms of the Settlement Agreement dated April 11, 2003.

The principal terms of the Settlement Agreement are as follows:

### 1. *Settlement Payment*

The settling defendants agreed to pay the plaintiff classes $8 million dollars, which was deposited into the Temple–Inland Settlement Escrow Account. Settlement Agreement ¶¶ 28–37. The $8 million dollar settlement figure was subject to reduction based on the number of class members who exercised their right to opt out of the classes ("opt out reduction"). *Id.* ¶¶ 22–25. The opt out reduction is capped at $800,000.00. *Id.* ¶ 25. The parties reserved the right to terminate the Settlement Agreement within 30 days of the expiration of the opt out period if the combined purchases of corrugated boxes and corrugated sheets by all class members who opted out exceeded ten percent of the settling defendants' sales of corrugated boxes and corrugated sheets. *Id.* Because the Petition for Writ of Certiorari was pending at the time the parties executed the Settlement Agreement, the Agreement also provided that a portion of the $8 million dollar settlement payment would be returned to the settling defendants in the event no class was ultimately certified. *Id.* ¶ 47. In light of the Supreme Court's denial of certiorari on April 21, 2003, that provision is no longer applicable.

Class plaintiffs and the settling defendants have advised the Court that distribution of the funds contained in the Escrow Account, less any attorneys' fees and costs approved by the Court, will be made pursuant to a plan of distribution after further notice to interested members of the classes and an opportunity to be heard. *Id.* ¶ 40. Class plaintiffs do not anticipate that such a plan will be presented until a much later stage in this litigation.

### 2. *Cooperation With Class Plaintiffs*

The settling defendants are required to cooperate with class plaintiffs in connection with the continued prosecution of the litigation. The terms of that cooperation are set forth in paragraph 48 of the Settlement Agreement. That paragraph requires the settling defendants to:

- Make certain individuals identified by class counsel available for personal interviews, depositions or for trial;
- Accept, through counsel, subpoenas for these individuals;
- Produce documents identified in the course of these interviews, depositions or trial preparation that the settling defendants have not previously produced; and
- "... produce in useable form at its expense computer data bases setting forth the sales by Gaylord Container Corporation of linerboard, corrugated containers and sheets which were the subject of the motion to compel filed by plaintiffs on February 10, 2003."

### 3. *Releases and Claims Reduction*

Upon final approval of the settlement by the Court, the Agreement provides for a release of all claims against settling defendants arising out of the causes of action asserted in the case. *Id.* ¶¶ 26–27. The claims of the plaintiff classes against all of the remaining defendants are specifically excluded from the release. *Id.* ¶ 55. However, the Agreement requires the classes to ultimately reduce any judgment by seventeen percent—the percentage of

the total sales of all defendants attributable to settling defendants. *Id.* ¶¶ 51–52. That percentage is specified in a judgment sharing agreement executed by all defendants. *Id.* This means that a verdict against the remaining defendants which includes damages based on the settling defendants' sales will have to be reduced by seventeen percent before entry of judgment. The same result is required with respect to a settlement. *Id.*

### 4. *Notice to the Class*

By Order dated April 14, 2003—the same Order that preliminarily approved the Settlement Agreement—the Court directed dissemination to the classes of notice of class certification. On April 24, 2003, class plaintiffs, through the Certified Public Accounting firm of Heffler, Radetich & Saitta L.L.P. ("Heffler"), mailed a total of 103,112 Notices to potential members of the classes identified by defendants. *See* Affidavit of Edward J. Sincavage, CPA Regarding Dissemination of Notice to the Class ("Sincavage Aff.") ¶¶ 1, 3. Summary notices were published in the national edition of *The Wall Street Journal* and in the *Pulp & Paper Week* on May 12, 2003. *Id.* ¶ 6. The Notice and summary notices informed potential class members of the certification of the classes, the terms of the Settlement Agreement, the right of each member to opt out of the classes or object to the settlement on or before June 9, 2003, and scheduling of the Final Approval hearing on August 11, 2003.

As of June 23, 2003, 140 Requests for Exclusion from members of the classes were received. *Id.* ¶ 7.[3] No class members

---

3. A copy of the Record of Potential Class Members Who Excluded Themselves from the Classes is appended to this Memorandum and Order.

The Court is aware of ten actions filed by former members of the classes ("tag-along actions"). Nine of such actions were filed in courts other than the Eastern District of Pennsylvania:

1. *Perdue Farms Incorporated v. Stone Container Corporation, et al.*, No. 03–1702 (D. Md. filed June 9, 2003);

2. *Sara Lee Corporation, et al. v. Smurfit Stone Container Corporation, et al.*, No. 03–3939 (N.D. Ill. filed June 10, 2003);

3. *Procter & Gamble Company, et al. v. Stone Container Corporation, et al.*, No. 03–3944 (N.D. Ill. filed June 10, 2003);

4. *United States Gypsum Company, et al. v. Stone Container Corporation, et al.*, No. 03–4251 (N.D. Ill. filed June 10, 2003);

5. *Bristol–Myers Squibb Company v. Smurfit Stone Container Corporation, et al.*, No. 03–4251 (S.D.N.Y. filed June 10, 2003);

6. *Smithfield Foods, Inc., et al. v. Smurfit Stone Container Corporation, et al.*, No. 03–3968 (N.D. Ill. filed June 11, 2003);

7. *Hormel Foods Corporation, et al. v. Stone Container Corporation, et al.*, No. 03–3421 (D. Minn. filed June 13, 2003);

8. *Milne Fruit Products, Inc., et al. v. Stone Container Corporation, et al.*, No. 03–4049 (N.D. Ill. filed June 13, 2003); and

9. *Kellogg Company, et al. v. Smurfit Stone Container · Corporation, et al.*, No. 03–4213 (N.D. Ill. filed June 19, 2003).

One action—*Conopco, Inc., et al. v. Smurfit Stone Container Corporation, as successor to Stone Container Corporation, et al.*, No. 03–3549 (E.D. Pa. filed June 9, 2003)—was filed in the Eastern District of Pennsylvania.

On August 6, 2003, a conditional transfer order was issued by the Judicial Panel on Multidistrict Litigation pursuant to Rule 7.4 of the Rules of Procedure of that Panel. That order provided for the transfer to this Court of the tag-along actions identified as numbers 1 through 4 and 6 through 9, *supra*, effective upon filing in the Office of the Clerk of this Court. The transmittal of the order to the Clerk of this Court was stayed fifteen (15) days in order to permit any party opposing the transfer to file a notice of opposition to the transfer with the Clerk of the Judicial Panel on Multidistrict Litigation. No such notices of opposition were filed. Thus, the conditional transfer order became final on August 21, 2003.

filed objections to the Settlement Agreement. *Id.* The Court confirmed the absence of any objections to the Settlement Agreement at the August 11, 2003 hearing. Aug. 11, 2003 Transcript of Fairness Hearing ("Hr'g Tr.") at 3–4.

## III. *DISCUSSION*

### A. APPLICABLE LAW

"The decision of whether to approve a proposed settlement of a class action is left to the sound discretion of the district court." *Girsh v. Jepson,* 521 F.2d 153, 156 (3d Cir.1975) (footnote omitted). In exercising that discretion, the Court is guided by Federal Rule of Civil Procedure 23(e). That rule provides that "[a] class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such a manner as the court directs." Fed.R.Civ.P. 23(e). In determining whether to approve a class action settlement under Rule 23(e), " '... the district court acts as a fiduciary who must serve as a guardian of the rights of absent class members.... [T]he court cannot accept a settlement that the proponents have not shown to be fair, reasonable and adequate.' " *In re Gen. Motors Corp. Pick–Up Truck Fuel Tank Products Liab. Litig.,* 55 F.3d 768, 785 (3d Cir.1995) (quoting *Grunin v. Int'l House of Pancakes,* 513 F.2d 114, 123 (8th Cir.), *cert. denied,* 423 U.S. 864, 96 S.Ct. 124, 46 L.Ed.2d 93 (1975) (further citation omitted)).

■ "Before sending notice of the settlement to the class, the court will usually approve the settlement preliminarily." *Id.* Such a preliminary determination requires the Court to consider the following factors: "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected."

*Id.* (citing 2 Herbert Newberg & Alba Conte, *Newberg on Class Actions* § 11.41, at 11–91 (3d ed.1992)); *see also In re Warfarin Sodium Antitrust Litig.,* 212 F.R.D. 231, 254 (D.Del.2002). If a court concludes, after consideration of those factors, that the settlement should be preliminarily approved, "... an initial presumption of fairness ..." is established. *In re Gen. Motors Corp.,* 55 F.3d at 785.

By Order dated April 14, 2003, the Court made a preliminary determination that the settlement was "... sufficiently fair, reasonable and adequate to authorize dissemination of notice to the classes." The Court must now finally decide whether the settlement should be approved as fair, reasonable and adequate. That requires an analysis of the Settlement Agreement under the factors set forth in *Girsh v. Jepson,* 521 F.2d 153 (3d Cir. 1975).

■ In *Girsh,* the Court of Appeals adopted a nine-factor test to guide district courts in evaluating whether a class action settlement is fair, adequate and reasonable, as follows:

> (1) the complexity, expense and likely duration of the litigation ...; (2) the reaction of the class to the settlement ...; (3) the stage of the proceeding and the amount of discovery completed ...; (4) the risks of establishing liability ...; (5) the risks of establishing damages ...; (6) the risks of maintaining the class action through the trial ...; (7) the ability of the defendants to withstand a greater a judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery ...; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation....

*Girsh,* 521 F.2d at 157 (quoting *City of Detroit v. Grinnell Corp.,* 495 F.2d 448,

463 (2d Cir.1974)); *see also In re Gen. Motors Corp.*, 55 F.3d at 785 (citing *Girsh* ). Upon consideration of each of the nine *Girsh* factors, the Court concludes that the settlement is fair, adequate and reasonable.

## B. APPLICATION OF THE *GIRSH* FACTORS

### 1. *The Complexity, Expense and Likely Duration of the Litigation*

■ The first *Girsh* factor—the complexity, expense and likely duration of the litigation—". . . is intended to capture 'the probable costs, in both time and money, of continued litigation.' " *In re Gen. Motors Corp.*, 55 F.3d at 811 (quoting *Bryan v. Pittsburgh Plate Glass Co.*, 494 F.2d 799, 801 (3d Cir.), *cert. denied*, 419 U.S. 900, 95 S.Ct. 184, 42 L.Ed.2d 146 (1974)). "An antitrust class action is arguably the most complex action to prosecute." *In re Motorsports Merchandise Antitrust Litig.*, 112 F.Supp.2d 1329, 1337 (N.D.Ga.2000); *see also In re Shopping Carts Antitrust Litig.*, 451–CLB, 1983 WL 1950, at *7 (S.D.N.Y. Nov. 18, 1983) (noting that ". . . antitrust price fixing actions are generally complex, expensive and lengthy" (citing *Grinnell*, 495 F.2d at 467–68)). "The legal and factual issues involved are always numerous and uncertain in outcome." *In re Motorsports*, 112 F.Supp.2d at 1337. This litigation is no exception. It began in 1998 with the filing of several Complaints in this District and the Northern District of Illinois. By Transfer Order dated February 12, 1999, the Judicial Panel on Multidistrict Litigation transferred all cases to this Court. There has been extensive discovery on a variety of issues including market impact and the existence of a conspiracy, resulting in the production of millions of pages of documents.

Counsel on both sides have vigorously prosecuted all aspects of this litigation, including the issue of class certification, which was not resolved until the Supreme Court denied certiorari on April 21, 2003. Trial is not expected to be any less contentious or time consuming. Based on the foregoing, the Court concludes that consideration of the first *Girsh* factor—complexity, expense and likely duration of this case—counsels in favor of approval of the Settlement Agreement.

### 2. *Reaction of the Classes to the Settlement*

■ The second *Girsh* factor—the reaction of the classes to the settlement— " '. . . attempts to gauge whether members of the class support the settlement. . . .' " *In re Warfarin*, 212 F.R.D. at 254 (quoting *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 318 (3d Cir.1998)). In this case, 103,112 Notices were mailed to potential members of the classes identified by defendants. *See* Sincavage Aff., *supra* ¶¶ 1, 3. Additionally, summary notices were published in the national edition of *The Wall Street Journal* on May 2, 2003 and in the *Pulp & Paper Week* on May 12, 2003. *Id.* ¶ 6, Ex. B. The Notice and summary notices advised potential members of the classes of the certification of the classes, the terms of the Settlement Agreement and the right of each member to be excluded from the classes or object to the settlement on or before June 9, 2003. The Court concludes that the content of the notice and the method of dissemination complies with the requirements of Federal Rule of Civil Procedure 23(c)(2) and (e). *See In re Prudential*, 148 F.3d at 326–28.

As of June 24, 2003, 140 Requests for Exclusion from Class Members had been received. Sincavage Aff., *supra* ¶ 7; Record of Potential Class Members Who Excluded Themselves from the Classes (appended to this Memorandum and Order). Some of the entities that opted out of the classes are large, sophisticated corpora-

tions. The remaining members of the classes include many large, sophisticated corporations, among them a substantial number of Fortune 500 companies. Moreover, the reaction of the members of the classes to the settlement has been overwhelmingly positive—no member of the classes has objected to the pending Settlement Agreement.

The attitude of class members toward the partial settlement of this action, as evidenced by the absence of objections, strongly militates a finding that the settlement is fair and reasonable. " '[T]his unanimous approval of the proposed settlement[ ] by the class members is entitled to nearly dispositive weight in this court's evaluation of the proposed settlement.' " *Fisher Bros. v. Phelps Dodge Industries, Inc.*, 604 F.Supp. 446, 451 (E.D.Pa.1985) (Shapiro, J.) (quoting *In re Art Materials Antitrust Litig.*, 100 F.R.D. 367, 372 (N.D.Ohio 1983)). Based on the foregoing, the Court concludes that consideration of the second *Girsh* factor—reaction of the classes to the settlement—counsels in favor of approval of the Settlement Agreement.

### 3. *The Stage of the Proceedings and the Amount of Discovery Completed*

■ The third *Girsh* factor—the stage of the proceedings and the amount of discovery completed—instructs a court to approve a settlement only if the parties have an " 'adequate appreciation' " of the merits of the case. *In re Prudential*, 148 F.3d at 319 (quoting *In re Gen. Motors Corp.*, 55 F.3d at 813). That requires an analysis of the nature and depth of discovery. *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 180 (E.D.Pa.2000). "[P]ost discovery settlements are more likely to reflect the true value of the claim and be fair." *Lazy Oil Co. v. Witco Corp.*, 166 F.3d 581, 588 (3d Cir.1999) (citing *Bell*

*Atlantic Corp. v. Bolger*, 2 F.3d 1304, 1314 (3d Cir.1993)).

The Settlement Agreement was reached in the fourth year of litigation after extensive informal discovery and discovery on class issues, and substantial completion of formal discovery. The Settlement Agreement is based upon significant fact—gathering and investigation into the legal issues. It was negotiated over a several month period on behalf of the classes by counsel experienced in antitrust and class action matters. The negotiations involved a number of face-to-face meetings and telephone conferences. The Court concludes that the parties conducted adequate investigation and discovery to gain an appreciation and understanding of the relative strengths and weaknesses of the claims and defenses asserted.

After inquiring into the negotiation process the Court is confident that there was no collusion. "A presumption of correctness is said to attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery." *Hanrahan v. Britt*, 174 F.R.D. 356, 366 (E.D.Pa.1997) (internal quotation marks omitted) (citation omitted). The Court is therefore deferential to the reasoned judgment of the well-informed attorneys. *See Jamison v. Butcher & Sherrerd*, 68 F.R.D. 479, 481 (E.D.Pa.1975). Based on the foregoing, the Court concludes that consideration of the third *Girsh* factor—the stage of the proceedings and the amount of discovery completed—counsels in favor of approval of the Settlement Agreement.

### 4–5. *The Risks of Establishing Liability (4) and the Risks of Establishing Damages (5)*

■ The fourth and fifth *Girsh* factors—the risks of establishing liability and the risks of establishing damages—require

a court to "... balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of an immediate settlement." *In re Prudential*, 148 F.3d at 319. Balancing the likelihood of establishing liability and damages can be difficult in evaluating partial settlements—"[b]ecause the litigation may continue against others, the parties may be reluctant to disclose fully and candidly their assessment of strengths and weaknesses that led to the settlement." *Manual for Complex Litigation (Third)* § 30.46, at 245.

The pending motion involves a partial settlement. Thus, class plaintiffs argue that it is not appropriate to outline in detail any risks perceived in establishing liability and damages, and the Court agrees. Instead, the plaintiff classes ask the Court to consider *In re Corrugated Container Antitrust Litigation* in addressing this issue. In that litigation, one of the earliest corrugated container antitrust actions, there were three trials—an initial criminal trial, a trial of the class action and a trial of the opt-out cases. Each trial proceeded for many months. In the first trial—the criminal trial—the jury acquitted the defendants after a few hours of deliberation. In the second trial—the trial of the class action—the jury found in favor of the class on the issues of liability and impact, but returned a verdict for the defendants on the issue of fraudulent concealment. In the third trial—the opt-out trial—the jury found that a conspiracy existed but had no impact. *In re Corrugated Container Antitrust Litig.*, No. 310, 1983 WL 1872, at *3–4 (S.D.Tex. Sept. 1, 1983) (describing history of litigation), *vacated on other grounds* 1983 WL 1755 (S.D.Tex. Dec.16, 1983) (vacating and withdrawing award of attorney's fees and costs); *see also In re Fine Paper Antitrust Litig.*, MDL 323, 1979 WL 1743 (E.D.Pa. Oct. 2, 1979) (McGlynn, J.) (describing history of litigation and noting that class action was

settled but that a number of states which instituted a separate action went to trial and lost).

The Second Circuit has identified a basic factor that is used to assess risk in antitrust class action cases: "[T]he only truly objective measurement of the strength of plaintiffs' case is found by asking: 'Was defendants' liability *prima facie* established by the government's successful action?'" *Grinnell*, 495 F.2d at 455. In this case, there was government action, but not as to the settling defendants. There was an FTC investigation against Stone Container Corporation, one of the non-settling defendants. The FTC charged Stone Container Corporation with a unilateral violation of Section 5 of the FTC Act. According to the FTC, Stone attempted to reduce linerboard inventories and had allegedly "invite[d]" some of its competitors to join in a "coordinated price increase." *Linerboard I*, 2000 WL 1475559, at *1 (quoting FTC Compl. ¶ 3). The FTC did not allege that the settling defendants or any other defendant had accepted that invitation. *Id.* The absence of government action against the settling defendants increases the risks involved in plaintiffs' case against them.

Taking these factors into account, and the substantial amount of formal and informal discovery in this action, class counsel concluded that they faced a genuine risk in litigating against the settling defendants. Section 30.42 of the *Manual for Complex Litigation (Third)* counsels that a Court evaluating a class action settlement "... should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation."

Based on the foregoing, consideration of the fourth and fifth *Girsh* factors—the risks of establishing liability and the risks of establishing damages—counsels in favor of approval of the Settlement Agreement.

### 6. The Risks of Maintaining the Class Action Through Trial

Under Federal Rule of Civil Procedure 23, a district court may decertify or modify a class at any time during the litigation if it proves to be unmanageable. *In re School Asbestos Litig.*, 789 F.2d 996, 1011 (3d Cir.1986). While class certification is always conditional and may be reconsidered, *Rendler v. Gambone Bros. Dev. Co.*, 182 F.R.D. 152, 160 (E.D.Pa.1998), the parties do not identify any particular issue or circumstance in this case that might lead to a particular risk of decertification. Based on the foregoing, the Court concludes that consideration of the sixth *Girsh* factor—the risks of maintaining the class action through trial—does not counsel in favor of approval of the Settlement Agreement, but neither does it counsel against such approval.

### 7. The Ability of the Settling Defendants to Withstand a Greater Judgment

■ The seventh *Girsh* factor requires the Court to determine "... whether the defendants could withstand a judgment for an amount significantly greater than the Settlement." *In re Cendant Corp. Litig.*, 264 F.3d 201, 240 (3d Cir.2001). Class plaintiffs do not contend that the settling defendants do not have the financial resources to pay a larger judgment. Instead they rely on cases in which settlements were approved where a settling defendant had the ability to pay greater amounts. As an example, in *Lazy Oil Co. v. Witco Corp.*, 95 F.Supp.2d 290, 318 (W.D.Pa. 1997), the district court concluded that the settling defendant's ability to pay greater amounts was outweighed by the risk that the plaintiffs would not be able to achieve any greater recovery at trial.

The Court agrees with the analysis of the court in *Lazy Oil* and concludes that this case is similar. Moreover, although class plaintiffs would be entitled to treble damages if successful at trial, the protracted nature of class action antitrust litigation means that any recovery would be delayed for several years, as trial on the cases originally assigned to this Court is not scheduled to commence until October 11, 2004. On this issue the Court also notes, as set forth in § III.B.8–9 of this Memorandum, *infra*, the Settlement Agreement affords class plaintiffs substantial and immediate benefits in the prosecution of the action.

Based on the foregoing, the Court concludes that consideration of the seventh *Girsh* factor—the ability of the settling defendants to withstand a greater judgment—counsels in favor of approval of the Settlement Agreement.

### 8—9. The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery (8) and the Range of Reasonableness of the Settlement Fund in Light of All the Attendant Risks of Litigation (9)

■ The last two *Girsh* factors require a court to consider whether the settlement is reasonable in light of the best possible recovery and the risks the parties would face if the case went to trial. "In order to assess the reasonableness of a proposed settlement seeking monetary relief, 'the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, should be compared with the amount of the proposed settlement.'" *In re Prudential*, 148 F.3d at 322 (quoting *In re Gen. Motors Corp.*, 55 F.3d at 806 (quoting *Manual for Complex Litigation (Second)* § 30.44, at 252)).

The Court first notes that the settlement amount of $7.2 million dollars is sig-

nificant. Although the size of the containerboard market is large and the settlement amount is relatively small in relation to the size of the market, the settlement provides class plaintiffs with an immediate financial recovery that ensures funding to pursue the litigation against the non-settling defendants.

The Court also notes that this settlement has significant value as an "icebreaker" settlement—it is the first settlement in the litigation—and should increase the likelihood of future settlements. An early settlement with one of many defendants can "break the ice" and bring other defendants to the point of serious negotiations. *In re Corrugated Container*, 1981 WL 2093, at \*19. That is precisely what occurred in this case. At the August 11, 2003 hearing, it was disclosed that, immediately prior to the March 2003 settlement reporting date, the parties intended to report to the Court that there was no interest in settlement negotiations. Hr'g Tr. at 20. However, within days of the announcement of the "agreement in principle" between class plaintiffs and the settling defendants, the non-settling defendants reported that they were willing to proceed with mediation, and mediation before the Honorable Lowell A. Reed, Jr. has commenced. *Id.* As the Court noted at the June 30, 2003 Status Conference in this case, this settlement "... was the icebreaker settlement that triggered mediation ..." in which the non-settling defendants in the case participated before Judge Reed. June 30, 2003 Transcript of Status Conference at 135.

As an "ice-breaker" settlement, this agreement compares favorably to similar settlements approved in other cases. The settling defendants possessed approximately twelve percent market share of the total sales of corrugated boxes and sheets during the class period and seventeen percent of the market share of the defendants in the litigation. The settlement equals roughly $750,000.00 per point of settling defendants' total market share which is in the range of settlements approved by other courts on such a basis. In *In re Corrugated Container*, 1981 WL 2093, at \*19, the district court "reaffirmed" as fair, adequate and reasonable an initial settlement with St. Regis Paper Company in the total amount of $1.7 million, or $428,000.00 per point of market share of defendants' market. Similarly, in *In re Fine Paper*, 1979 WL 1743, at \*2, the district court approved an initial partial settlement of $30 million dollars where the settling defendants had a thirty-eight percent share of the market, which translated into $790,000.00 per point of market share.

There is another benefit of the settlement that does not have a precise monetary value. As set forth in more detail in § II.B.2 of this Memorandum, *supra,* the Settlement Agreement obligates the settling defendants to provide significant cooperation to class plaintiffs in pursuing their case against the non-settling defendants immediately upon execution. Class counsel reported at the August 11, 2003 hearing that they have already taken advantage of this cooperation by interviewing numerous witnesses currently and formerly employed by the settling defendants. The provision of such assistance is a substantial benefit to the classes and strongly militates toward approval of the Settlement Agreement. *See, e.g., In re Mid–Atl. Toyota Antitrust Litig.,* 564 F.Supp. 1379, 1386 (D.Md.1983) (concluding that commitment to cooperate is appropriate factor to consider in approving partial settlement); *In re Corrugated Container,* 1981 WL 2093, at \*16 ("The cooperation clauses constituted a substantial benefit to the class."); *In re Ampicillin Antitrust Litig.,* 82 F.R.D. 652, 654 (D.D.C.1979).

644

Based on the foregoing, the Court concludes that consideration of the eighth and ninth *Girsh* factors—the range of reasonableness of the settlement fund in light of the best possible recovery and the range of reasonableness of the settlement fund in light of all the attendant risks of litigation—counsel in favor of approval of the Settlement Agreement.

## IV. *CONCLUSION*

For the foregoing reasons, the Court concludes that consideration of the nine *Girsh* factors counsels in favor of approval of the Settlement Agreement. Accordingly, the Court grants Class Plaintiffs' Motion for Final Approval of Settlement Agreement Between the Class and Temple–Inland, Inc. and Gaylord Container Corporation and approves the Settlement Agreement between the classes as certified by the Court and Temple–Inland, Inc. and Gaylord Container Corporation dated April 11, 2003 as fair, adequate and reasonable.

An appropriate Order follows.